1

**K&L GATES LLP**
10100 Santa Monica Boulevard
Seventh Floor
Los Angeles, California  90067
Telephone: 310.552.5000
Facsimile: 310.552.5001

2

3

4

Kevin S. Asfour (SBN 228993)
*kevin.asfour@klgates.com*
Nancy C. Hagan (SBN 273981)
*nancy.chang@klgates.com*

5

6

7

Attorneys for Defendants Wells Fargo
Bank, N.A. and U.S. Bank, N.A. as
Trustee

8

9

10

UNITED STATES DISTRICT COURT

11

CENTRAL DISTRICT OF CALIFORNIA

12

| | |
|---|---|
| MOHAMMAD ALI TALAIE, et al., | Case No. CV 12-4959-DMG (AGRx) |
| Plaintiffs, | **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS** |
| vs. | |
| WELLS FARGO BANK, N.A., et al., | Date: September 28, 2012 |
| Defendants. | Time: 9:30 a.m. |
| | Courtroom: 7 |
| | Assigned to Hon. Dolly M. Gee |

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RECYCLED PAPER

# **TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................... 1

II.  THE COURT SHOULD GRANT THE MOTION IN ITS ENTIRETY .............. 1

    A.   Plaintiffs' Section 1641(g) Arguments Are Unavailing ........................... 1

        1.   As a Matter of Judicial Notice, the Subject Loan Transfer Predates The Statute........................................................................... 1

        2.   Plaintiffs' Failure to Allege Damages Bars Their 1641(g) Claim... 5

        3.   Plaintiffs Cannot Assert 1641(g) Liability Against Wells Fargo .... 6

    B.   Plaintiffs' Arguments Regarding the Tender Requirement Are Unavailing ........................................................................................... 7

    C.   Plaintiffs' Arguments In Support of Their Cancellation Claim Are Unavailing ......................................................................................... 11

    D.   Plaintiffs' Arguments in Support of Their Quiet Title Claim Are Unavailing ......................................................................................... 11

    E.   Plaintiffs' Arguments in Support of Their Declaratory Relief Claim Are Unavailing ................................................................................... 12

    F.   Plaintiffs' Arguments in Support of Their Fraud Claim Are Unavailing ......................................................................................... 12

    G.   Plaintiffs' Arguments in Support of Their Slander of Title Claim Are Unavailing ......................................................................................... 13

    H.   Plaintiffs' UCL Arguments Are Unavailing ........................................... 14

        1.   Tender is Required to Support Plaintiffs' UCL Claim ................. 14

        2.   Plaintiffs' UCL Claim is Federally Preempted............................. 15

        3.   Plaintiffs Lack Standing to Bring Their UCL Claim..................... 16

        4.   Plaintiffs' Have Not Alleged Unfair Competition, in Any Event . 17

III. CONCLUSION ............................................................................................ 17

RECYCLED PAPER

# TABLE OF AUTHORITIES

## Federal Cases

*Alicea v. GE Money Bank*,
    No. 09-0091, 2009 U.S. Dist. LEXIS 60813 (N.D. Cal. Jul. 16, 2009)..........7

*Beall v. Quality Loan Serv. Corp.*,
    No. 10-1900, 2011 U.S. Dist. LEXIS 29184 (S.D. Cal. Mar. 21, 2011) ........5

*Benito v. Indymac Mortg. Servs.*,
    No. 09-1218, 2010 U.S. Dist. LEXIS 51259 (D. Nev. May 21, 2010).........17

*Bouyer v. Countrywide Bank, FSB*,
    No. 08-5583, 2009 U.S. Dist. LEXIS 53940 (N.D. Cal. Jun. 25, 2009).......14

*Bradford v. HSBC Mortg. Corp.*,
    829 F. Supp. 2d 340 (E.D. Va. 2011)............................................................2

*Caballero v. Bank of America*,
    No. 10-01781, 2012 U.S. App. LEXIS 3073 (9th Cir. Feb. 15, 2012) .........3

*Che v. Aurora Loan Servs., LLC*,
    847 F. Supp. 2d 1205 (C.D. Cal. 2012)........................................................5

*Curcio v. Wachovia Mortg. Corp.*,
    No. 09-CV-1498, 2009 WL 3320499 (S.D. Cal. Oct. 14, 2009) .................15

*Daniels-Hall v. Nat'l Educ. Ass'n*,
    629 F.3d 992 (9th Cir. 2010)........................................................................2

*Davidson v. Countrywide Home Loans, Inc.*,
    No. 09-2694, 2010 U.S. Dist. LEXIS 24589 (S.D. Cal. Mar. 16, 2010) ........4

*De la Salle v. America's Wholesale Lender*,
    No. 09-02701, 2010 U.S. Dist. LEXIS 36319 (E.D. Cal. Apr. 13, 2010).....17

*DeLeon v. Wells Fargo Bank, N.A.*,
    No. 10-01390, 2010 WL 4285006 (N.D. Cal. Oct. 22, 2010)................15, 16

*Diaz v. BSI Fin. Servs.*,
    No. 12-1461, 2012 U.S. Dist. LEXIS 78798 (C.D. Cal. Jun. 5, 2012).......5, 6

*Eng v. Dimon*,
    No. 11-3173, 2012 U.S. Dist. LEXIS 78756 (N.D. Cal. Jun. 6, 2012)..........2

*Esoimeme v. Wells Fargo Bank*,
    No. 10-2259, 2011 U.S. Dist. LEXIS 98492 (E.D. Cal. Sep. 1, 2011).........12

*Exxon Shipping Co. v. Airport Depot Diner*,
    120 F.3d 166 (9th Cir. 1997).......................................................................12

*Jacobsen v. Aurora Loan Servs., LLC*,
    No. 12-0135, 2012 U.S. Dist. LEXIS 111503 (N.D. Cal. Aug. 8, 2012) .......6

*Jara v. Aurora Loan Svcs.*,
    2012 U.S. Dist. LEXIS 45532 (N.D. Cal. Mar. 30, 2012) ............................6

*Keilhotz v. Lennox Int'l Inc.*,
    No. 08-00836, 2009 U.S. Dist. LEXIS 81108 (N.D. Cal. Sep. 9, 2009) ......13

*Knievel v. ESPN*,
    393 F.3d 1068 (9th Cir. 2005) ......................................................................2

*Landgraf v. USI Film Prods.*,
    511 U.S. 244 (1994) .....................................................................................2

*Lyons v. Bank of America, N.A.*,
    No. 11-1232, 2011 U.S. Dist. LEXIS 90499 (N.D. Cal. Aug. 15, 2011) .......4

*Newsom v. Countrywide Home Loans, Inc.*,
    714 F. Supp. 2d 1000 (N.D. Cal. 2010)................................................15, 16

*Nguyen v. Wells Fargo Bank, N.A.*,
    749 F.Supp.2d 1022 (N.D. Cal. 2010).................................................15, 16

*Nicewander v. MTC Fin., Inc.*,
    No. 10-2141, 2011 U.S. Dist. LEXIS 91721 (S.D. Cal. Aug. 17, 2011) 10, 15

**RECYCLED PAPER**

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

*Odimbur v. Wells Fargo Bank*,
    11-04581, 2012 WL 680057 (C.D. Cal. Mar. 1, 2012)...................................8

*Ortiz v. America's Servicing Co.*,
    No. 12-191, 2012 U.S. Dist. LEXIS 82092 (C.D. Cal. Jun. 11, 2012).........15

*Permitor v. Wells Fargo Bank, N.A.*,
    No. 12-00545, 2012 U.S. Dist. LEXIS 55977 (N.D. Cal. Apr. 20, 2012)......3

*Quintero Family Trust v. OneWest Bank, F.S.B.*,
    No. 09-1561, 2010 U.S. Dist. LEXIS 6618  (S.D. Cal. Jan. 27, 2010)...........4

*Ruiz v. Suntrust Mortg., Inc.*,
    No. 12-0878, 2012 U.S. Dist. LEXIS 103239 (E.D. Cal. Jul. 24,  2012).......4

*Sarbaz v. Wachovia Bank*,
    No. 10-3462, 2010 U.S. Dist. LEXIS 119567 (N.D. Cal. Nov. 10, 2010) ...15

*Soares v. ReconTrust Co., N.A.*,
    No. 12-0070, 2012 U.S. Dist. LEXIS 73383 (C.D. Cal. May 25, 2012) ........6

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001)..............................................................................2

*Squires v. BAC Home Loans Servicing, LP*,
    No. 11-413, 2011 U.S. Dist. LEXIS 137581 (S.D. Ala. Nov. 29, 2011)........7

*Tran v. Bank of Am. Corp.*,
    No. 11-2784, 2012 U.S. Dist. LEXIS 32947 (S.D. Cal. Mar. 12, 2012) ......11

*Vogan v. Wells Fargo Bank, N.A.*,
    No. 11-2098, 2011 WL 5826016 (E.D. Cal. Nov. 17, 2011) .....................4, 7

**State Cases**

*Bank of America v. La Jolla Group II*,
    129 Cal. App. 4th 706 (2005)...........................................................................9

*Calvo v. HSBC Bank USA*, N.A.,
    199 Cal. App. 4th 118 (2011) ...........................................................................3

*Dimock v. Emerald Properties*,
    81 Cal. App. 4th 868 (2000) ...........................................................................10

*Garretson v. Post*, 156 Cal. App. 4th 1508 (2007)...........................................14

*Hall v. Time, Inc.*,
    158 Cal. App. 4th 847 (2008) .........................................................................16

*Haynes v. EMC Mortgage Corp.*,
    205 Cal. App. 4th 329 (2012) ...........................................................................3

*Howard v. Schaniel*,
    113 Cal. App. 3d 256 (1980) ..........................................................................13

*Krantz v. BT Visual Images*,
    89 Cal. App. 4th 164 (2001) ...........................................................................16

*Mabry v. Superior Court*,
    185 Cal. App. 4th 208 (2010) .........................................................................10

*People v. Duz-Mor Diagnostic Lab., Inc.*,
    68 Cal. App. 4th 654 (1998) ...........................................................................16

*Stockwell v. Barnum*,
    7 Cal. App. 413 (1908) ......................................................................................3

**Federal Statutes**

15 U.S.C. § 1640.................................................................................................5, 6

15 U.S.C. § 1641......................................................................................................1

P.L. 111-22, Div A, Title IV, § 404(a), 123 Stat. 1658 ........................................2

RECYCLED PAPER

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

**State Statutes**

Cal. Civ. Code § 1624 ................................................................................9
Cal. Civ. Code § 1698 ................................................................................9
Cal. Civ. Code § 2923.5 ...........................................................................10
Cal. Civ. Code § 2936 ................................................................................4
Cal. Civ. Code § 3412 ...............................................................................10

**Federal Regulations**

12 C.F.R. § 34.4 ......................................................................................15

RECYCLED PAPER

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

Defendants Wells Fargo Bank, N.A. ("Wells Fargo") and U.S. Bank N.A. as Trustee for the Structured Adjustable Rate Mortgage Loan Trust, Mortgage Pass-Through Certificates Series 2006-4 ("US Bank") (Wells Fargo and US Bank are collectively referred to as "Defendants") respectfully submit this reply in support of their Motion to Dismiss the Complaint herein ("Motion"), in response to the opposition filed by Plaintiffs Mohammad Ali Talaie and Rosa W. Talaie ("Plaintiffs").

## I.    INTRODUCTION

In their motion papers, Defendants demonstrated that none of the Complaint's causes of action are viable as a matter of law.  Plaintiffs' opposition does not alter this. The fact remains that the centerpiece of Plaintiffs' Complaint, 15 U.S.C. § 1641(g), was not even in existence at the time of the subject loan transfer (and even if it were, Plaintiffs have not alleged sufficient facts to support such a claim).  Nor have Plaintiffs adequately pleaded any of their other claims (all of which are independently barred by Plaintiffs' inability to allege tender, in any event).  The Court should grant Defendants' motion without leave to amend.

## II.    THE COURT SHOULD GRANT THE MOTION IN ITS ENTIRETY

### A.    Plaintiffs' Section 1641(g) Arguments Are Unavailing

Despite the arguments in their opposition, Plaintiffs cannot escape the multiple, independent defects in their 15 U.S.C. § 1641(g) claim.

#### 1.    As a Matter of Judicial Notice, the Subject Loan Transfer Predates The Statute

As detailed in Defendants' moving papers—and as a matter of judicial notice— the loan transfer at issue occurred *prior* to the enactment of Section 1641(g), and thus Plaintiffs' claim under the statute is not viable.  Again, the subject loan was transferred on April 1, 2006.  *See* Motion, p. 5:1-3; Defendants' Request for Judicial Notice in

1  Support of Motion to Dismiss, Dkt. No. 19 ("RJN"), Exs. D – F.[1]  Section 1641(g) was

2  not enacted until 2009.  15 U.S.C. § 1641(g); *see also* P.L. 111-22, Div A, Title IV, §

3  404(a), 123 Stat. 1658.  Accordingly, no Section 1641(g) notice was required here.[2]

4  *See, e.g., Eng v. Dimon*, No. 11-3173, 2012 U.S. Dist. LEXIS 78756, at *3-4 (N.D.

5  Cal. Jun. 6, 2012) ("15 U.S.C. § 1641(g), was not added to TILA until 2009 and does

6  not apply retroactively to conduct occurring before its effective date."); *Bradford v.*

7  *HSBC Mortg. Corp.*, 829 F. Supp. 2d 340, 353 (E.D. Va. 2011) (citing *Landgraf v. USI*

8  *Film Prods.*, 511 U.S. 244, 269-70 (1994)).

9        In their opposition, Plaintiffs first argue that their 1641(g) claim survives simply

10  because they have *alleged* that the loan was not transferred until 2012.  Plaintiffs are

11  mistaken: the law is clear that allegations that contradict matters of judicial notice are

12  disregarded in ruling on a motion to dismiss.  *See, e.g., Daniels-Hall v. Nat'l Educ.*

13  *Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010); *Sprewell v. Golden State Warriors*, 266 F.3d

14  979, 988 (9th Cir. 2001).

15        Plaintiffs also attempt to escape the consequences of the 2006 loan transfer by

16  arguing that the transfer was "void" because it allegedly "violated the terms of the

17  _____

18  [1] As explained in Defendants' motion, the transfer went from Wells Fargo to Lehman Brothers Bank,
    FSB (*see* RJN, Ex. D, p. 14 (17 of 129)), then to Lehman Brothers Holdings, Inc. (*see* RJN, Ex. E, p.

19  3 (5 of 22)), then to Structured Asset Securities Corporation (*see* RJN, E, p. 5 (7 of 22)), and finally
    to US Bank (*see* RJN, Ex. F, p. 46 (53 of 214)).  Plaintiffs' objections to Defendants' RJN are

20  groundless.  As set forth in the RJN, the documents at issue are public records, and plainly satisfy the
    requirements of judicial notice.  Moreover, Plaintiffs, themselves, rely heavily upon the provisions of

21  the securitization documents in crafting the claims in their Complaint and their arguments in
    opposition to the motion, e.g., Plaintiffs' argument that the securitization materials "require"

22  recordation of the subject loan transfer (which is erroneous, as detailed below).  As such, even if the
    documents were *not* judicially noticeable (which is not the case), the Court should still consider them

23  in ruling on this motion pursuant to the doctrine of incorporation by reference.  *See, e.g., Knievel v.*
    *ESPN*, 393 F.3d 1068, 1076-77 (9th Cir. 2005).

24
    [2] Plaintiffs' contention that all loans *originated* after September 30, 1995 fall within Section

25  1641(g)'s ambit is irrelevant—the alleged conduct constituting the violation (i.e., the failure to
    provide notice of transfer) must still have occurred after the statute's enactment in order for liability

26  to attach.  *See Bradford*, 829 F. Supp. 2d at 353 (E.D. Va. 2011) (citing *Landgraf*, 511 U.S. at 269-
    70); *Eng*, 2012 U.S. Dist. LEXIS 78756, at *3-4.  Indeed, to hold otherwise would instantly create

27  liability for many thousands, if not millions, of loan transfers that occurred prior to the statute's
    enactment, simply because the creditors did not comply with highly specific statutory notice

28  requirements that *did not yet even exist*.  If Congress truly intended this bizarre result, it needed to
    have said so within the statute (which it did not).  *See id.*

                                                                              **RECYCLED PAPER**
**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

MBS trust."  In this vein, Plaintiffs assert that "the trust required an Assignment to be **recorded** in the Los Angeles County Recorder's Office before the Closing date in 2006."  Opposition, p. 9:1-17 (emphasis added).  This is absolutely incorrect, as a matter of law.  As detailed in Defendants' moving papers (*see* Motion, p. 6:22-28), the securitization trust documents *only* provide for recordation of loan transfers *if required by local law*.  *See* RJN, Ex. D, p. 79 (82 of 129) ("such recordation to be effected at the Company's expense in the event recordation is either **necessary under applicable law** or requested by the Purchaser at its sole option") (emphasis added); RJN, Ex. E, p. 15 (17 of 22) ("subsequent assignments of the original Mortgage (other than the assignment to the Depositor) have been recorded **in the appropriate jurisdictions wherein such recordation is necessary**") (emphasis added); RJN, Ex. F, p. 49 (56 of 214) (recording of assignments unnecessary if "recording in such states is not required to protect the Trustee's interest").  Indeed, this limitation is evident even from the passage of the documents quoted in Plaintiffs' opposition.  *See* Opposition, p. 9:5-7 (providing only for recordation of assignments "in the appropriate jurisdictions wherein such recordation is necessary").  And, as explained in Defendants' motion, California law does **not** require the recordation of an assignment to a new creditor where, as here, the loan is secured by a Deed of Trust (as opposed to a conventional two-party "mortgage").  *See Calvo v. HSBC Bank USA*, N.A., 199 Cal. App. 4th 118, 121-25 (2011) (citing *Stockwell v. Barnum*, 7 Cal. App. 413 (1908)); *see also Haynes v. EMC Mortgage Corp.*, 205 Cal. App. 4th 329, 336 (2012); *Caballero v. Bank of America*, No. 10-017818, 2012 U.S. App. LEXIS 3073, at *2 (9th Cir. Feb. 15, 2012); *Permitor v. Wells Fargo Bank, N.A.*, No. 12-00545, 2012 U.S. Dist. LEXIS 55977, at *13-14 (N.D. Cal. Apr. 20, 2012).  Thus, Plaintiffs' allegations regarding the supposed invalidity of the 2006 loan transfer are erroneous as a matter of law, and the Court should disregard them accordingly.

Similarly, Plaintiffs' claim is not salvaged by their reliance on the Assignment of Deed of Trust ("ADOT") that was eventually recorded in 2012.  Again: by that time,

RECYCLED PAPER

1  Plaintiffs' loan and security interest had *already* transferred to US Bank, back in 2006.

2  *See* Cal. Civ. Code § 2936; *Davidson v. Countrywide Home Loans, Inc.*, No. 09-2694,

3  2010 U.S. Dist. LEXIS 24589, at *14 (S.D. Cal. Mar. 16, 2010) ("transfer of the note

4  carries with it the security, without any formal assignment or delivery, or even mention

5  of the latter"); *Quintero Family Trust v. OneWest Bank, F.S.B.*, No. 09-1561, 2010

6  U.S. Dist. LEXIS 6618, at *23-24 (S.D. Cal. Jan. 27, 2010) ("when Clarion assigned

7  the note to IndyMac…the security automatically followed the note").  Thereafter, the

8  2012 ADOT was created simply to confirm (for clarity of title purposes), that US Bank

9  was the current holder of the loan, since Plaintiffs had defaulted and a foreclosure was

10  likely.  The ADOT was not necessary, however, nor did it constitute a "new" transfer

11  of the loan that would necessitate a Section 1641(g) notice, since US Bank had been

12  the holder of the loan since 2006.[3]  *Id.*; *see also Ruiz v. Suntrust Mortg., Inc.*, No. 12-

13  0878, 2012 U.S. Dist. LEXIS 103239, at *46 (E.D. Cal. Jul. 24,  2012) ("a deed of

14  trust assignment provides public notice of transfer in the beneficial interest but is not

15  required").

16      Moreover, the flaws in Plaintiffs' arguments for 1641(g) liability become even

17  more apparent upon considering their ultimate logical outcome:  If, as Plaintiffs

18  contend, the securitization documents require that any loan transfer to the trust be

19  recorded prior to the Closing Date in 2006, and if the failure to comply with this

20  alleged requirement renders any putative transfer "void" (neither of which is true), then

21  even now there would still be *no transfer of the loan to US Bank*—and thus no

22  requirement to provide any Section 1641(g) notice.  In other words, even if the

23

24  ---

[3] The case of *Vogan v. Wells Fargo Bank, N.A.*, No. 11-2098, 2011 WL 5826016 (E.D. Cal. Nov. 17,
25  2011), on which Plaintiffs rely, is inapposite here.  In *Vogan*, the defendants acknowledged in their
    motion that the loan at issue was not transferred until 2011, i.e., well *after* the enactment of Section
26  1641(g).  *See Vogan*, 2011 WL 5826016 at *1 ("Defendants claim that the loan was sold…on January
    11, 2011.").  Here, by contrast, it is clear from matters of judicial notice that the subject loan was
27  transferred to US Bank in 2006, prior to the enactment of the statute.  *See* RJN, Exs. D – F.
    Likewise, Plaintiffs' citation to *Lyons v. Bank of America, N.A.*, No. 11-1232, 2011 U.S. Dist. LEXIS
28  90499 (N.D. Cal. Aug. 15, 2011) is unavailing, as that case did not even involve a Section 1641(g)
    claim.

4  RECYCLED PAPER

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

premises underlying Plaintiffs' theory of liability were accurate (which they are not), Plaintiffs **still** would have no Section 1641(g) claim.

In sum, the subject loan transfer occurred in 2006, and thus the 1641(g) notice requirement enacted in 2009 is simply inapplicable. **For this reason, alone**, the Court should dismiss Plaintiffs' Section 1641(g) claim without leave to amend.

2.     Plaintiffs' Failure to Allege Damages Bars Their 1641(g) Claim

As set forth in Defendants' motion, Plaintiffs' Section 1641(g) claim also fails on the ground that they have not alleged facts demonstrating damages—actual *or* statutory.  Under the relevant provisions of the Truth in Lending Act ("TILA"), a plaintiff may recover actual damages—and also statutory damages, but **only** if finance charges are attributable to the violation.  *See, e.g., Diaz v. BSI Fin. Servs.*, No. 12-1461, 2012 U.S. Dist. LEXIS 78798, at *10-11 (C.D. Cal. Jun. 5, 2012) (citing 15 U.S.C. § 1640(a); *Che v. Aurora Loan Servs., LLC*, 847 F. Supp. 2d 1205 (C.D. Cal. 2012); *Beall v. Quality Loan Serv. Corp.*, No. 10-1900, 2011 U.S. Dist. LEXIS 29184 (S.D. Cal. Mar. 21, 2011)).  In addition, a plaintiff may also recover attorney's fees, but only if he or she is *successful in recovering damages*.  *See* 15 U.S.C. § 1640(a)(3) (providing for attorney's fee recovery "in the case of any successful action *to enforce the foregoing liability* [for damages]") (emphasis added).  Here, Plaintiffs' complaint does not allege facts demonstrating any actual damages stemming from the alleged 1641(g) violation, nor any resultant finance charges that might support statutory damages, and thus their claim fails accordingly.

In their opposition, Plaintiffs effectively concede that they have not alleged *actual* damages (*see* Opposition, p. 11:10-11), but nonetheless maintain that their claim is viable by virtue of the *statutory* damages provision.  Plaintiffs are mistaken, however, as their Complaint simply does not allege any facts demonstrating finance charges resulting from the alleged violation, as would be required to support a claim for statutory damages.  *See, e.g., See Beall*, 2011 U.S. Dist. LEXIS 29184, at *18-19 (dismissing Section 1641(g) claim where "Plaintiff has not alleged any actual damages

1  *or finance charges*") (emphasis added); *Diaz*, 2012 U.S. Dist. LEXIS 78798, at \*12

2  (dismissing Section 1641(g) claim where plaintiff failed to allege "any erroneous

3  finance or interest charges incurred as a result of the misinformation she had regarding

4  the identity of the owner of her loan."); *see also Soares v. ReconTrust Co., N.A.*, No.

5  12-0070, 2012 U.S. Dist. LEXIS 73383, at \*16 (C.D. Cal. May 25, 2012) (dismissing

6  Section 1641(g) claim where plaintiff "has not alleged that HSBC's failure to provide

7  notice of assignment resulted in any additional financial charges or any other plausible

8  damages.").

9       And because Plaintiffs have not alleged sufficient facts to support actual or

10  statutory damages, they cannot recover attorney's fees, either.  *See* 15 U.S.C. §

11  1640(a)(3).

12       For these reasons, too, the Court should dismiss Plaintiffs' Section 1641(g)

13  claim.

14            3.     <u>Plaintiffs Cannot Assert 1641(g) Liability Against Wells Fargo</u>

15       As noted in Defendants' moving papers, Plaintiffs' Section 1641(g) claim

16  against *Wells Fargo* fails for the additional reason that it is not subject to liability

17  under that statute.

18       Again, by its own terms, Section 1641(g) imposes its requirements *only* upon

19  "the creditor that is the new owner or assignee of the debt."  15 U.S.C. § 1641(g)

20  (emphasis added); *see also Jara v. Aurora Loan Svcs.*, 2012 U.S. Dist. LEXIS 45532,

21  at \*12-13 (N.D. Cal. Mar. 30, 2012) (dismissing claim because "15 U.S.C. § 1641(g)

22  only applies to creditors who are new owners or assignees of mortgage loan, and Mr.

23  Jara does not allege that Aurora is a new owner or assignee of his loan"); *see also*

24  *Jacobsen v. Aurora Loan Servs., LLC*, No. 12-0135, 2012 U.S. Dist. LEXIS 111503, at

25  \*13-14 (N.D. Cal. Aug. 8, 2012) (a loan servicer who does not own the loan cannot be

26  liable under 15 U.S.C. § 1641(g)).  Plaintiffs have not alleged that Wells Fargo is the

27  assignee of their loan, and thus they cannot assert their Section 1641(g) claim against

28  Wells Fargo.

RECYCLED PAPER

In their opposition, Plaintiffs contend that Wells Fargo is liable under the statute, arguing that state common law imposes vicarious liability upon a principal for the acts of its agent.  Specifically, Plaintiffs state that they are suing Wells Fargo "as the *agent* US Bank, N.A. hired to give notice to the Talaies," and that "US Bank, N.A., as the assignee, is *vicariously liable for Wells Fargo's failure* to give the required notice to the Talaies."  Opposition, p. 13:8-11 (emphasis added).  Even assuming *arguendo* that this is true, the **inverse** proposition—namely, that Wells Fargo is liable for US Bank's failure to discharge its alleged statutory duty—does not hold.  Once again, the statute imposes its notice requirement **only** upon the "new creditor."  There is no authority for Plaintiffs' contention that where the new creditor retains another party to provide the 1641(g) notice on its behalf, a plaintiff may sue that *third party* for an alleged failure to perform.

Indeed, even the cases cited by Plaintiffs in this regard are consistent with Defendants' position.  In the *Vogan* case, the plaintiff only asserted its Section 1641(g) claim against the *assignee* of the subject loan—not the other defendants in the case.  *See Vogan*, 2011 WL 5826016, at *3.  Similarly, in *Squires v. BAC Home Loans Servicing, LP*, No. 11-413, 2011 U.S. Dist. LEXIS 137581 (S.D. Ala. Nov. 29, 2011), the plaintiff alleged his Section 1641(g) claim against the assignee of the loan, not any alleged agent thereof.  *See Squires*, 2011 U.S. Dist. LEXIS 137581, at *8-9.

**B.**     **Plaintiffs' Arguments Regarding the Tender Requirement Are Unavailing**

As detailed in Defendants' motion, all of Plaintiffs' remaining claims are barred by their failure to allege tender of their outstanding debt, a rule which has been applied by innumerable courts to dismiss actions of this type.

In their opposition, Plaintiffs' erroneously argue that the tender rule only applies to *completed* foreclosure sales, not pending foreclosures.  This is not the law.  *See, e.g., Alicea v. GE Money Bank*, No. 09-0091, 2009 U.S. Dist. LEXIS 60813, at *7-8 (N.D. Cal. Jul. 16, 2009) ("When a debtor is in default of a home mortgage loan, and a

foreclosure is **either pending <u>or</u> has taken place**, the debtor must allege a credible tender of the amount of the secured debt to maintain any cause of action for wrongful foreclosure.") (emphasis added); *Odimbur v. Wells Fargo Bank*, 11-04581, 2012 WL 680057, at *3 (C.D. Cal. Mar. 1, 2012) (same).

Plaintiffs also argue that the tender requirement does not apply to them because their pending foreclosure is the result of a "void" Notice of Default.  Again, Plaintiffs are mistaken.  As detailed in Defendants' moving papers, the Complaint does not set forth any facts demonstrating that the Notice of Default is void.  Indeed, Plaintiffs do not dispute that they were in arrears on their loan when the NOD recorded, which alone precludes the notion that it was "void."  Nor does Plaintiffs' conduct following the recording of the NOD somehow render it "void":  Plaintiffs allege that they were advised that they must pay $19,197 (the approximate amount of their arrearage as of November 20, 2010) in order to be considered for a loan modification.  *See* Complaint, ¶¶ 46-47 ("Plaintiffs were advised by Alastair Bloxsom, an employee working for Wells Fargo, that these payments were required to consider them for a loan modification."); *see also* Complaint, ¶¶ 93-94.  Plaintiffs further allege that they thereafter paid this amount—but these payments were not completed until March 29, 2011, more than four months later.  Complaint, ¶ 94.  Meanwhile, of course, **several additional monthly payments had come due** (and as Plaintiffs acknowledge, each of these payments was approximately $4,500, *see* Complaint, ¶¶ 41-42).  Moreover, the NOD, itself, expressly advised that the arrearage "will increase until your account becomes current."  RJN, Ex. B.  Thus, even *after* Plaintiffs had made their March 29, 2011 payment, they were still in arrears on their loan (and Plaintiffs do not allege having made having made any further payments, which is consistent with Plaintiffs' express allegations that they **could not afford** to make their payments, *see* Complaint, ¶¶ 41-42).

In their opposition, Plaintiffs incorrectly argue that by their alleged payment of $19,197, "the default was cured by mutual agreement of the parties."  Opposition, p.

14:4-5.  This argument has no support in the Complaint—rather, the Complaint alleges simply that Plaintiffs were advised that "these payments were required to *consider them for a loan modification*."  Complaint, ¶ 47 (emphasis added).  There is no allegation in the Complaint that the parties agreed that the "default would be cured" as a result of making these payments—and again, Plaintiffs have not alleged making *any payments at all* since March of 2011.

Moreover, even if the Complaint *did* allege an agreement that the "default would be cured" by making these payments (which it does not), any such theory would be legally barred by the Statute of Frauds.  By their own admission, Plaintiffs borrowed $800,000 in connection with the loan, and were obligated to make monthly payments of approximately $4,500.  *See* Complaint, ¶¶ 22, 41-42.  Unquestionably, then, Plaintiffs already owed the money at issue when the NOD was recorded, and their indebtedness would continue to grow month after month—by virtue of Plaintiffs' own written loan documents.  And of course, the loan falls within the Statute of Frauds (thereby requiring that it be reflected in a writing), both because i) it is secured by real property; and ii) it is a loan of more than $100,000.  *See* Cal. Civ. Code §§ 1624(a)(6), 1624(a)(7).  Plaintiffs' opposition brief essentially argues (without support in the Complaint) that the parties *orally modified* these terms (i.e., by agreeing that the "default would be cured" by paying something less than what was owing)—but to modify a contract within the Statute of Frauds, the *modification* must also satisfy the Statute of Frauds, i.e., it too must be in writing.  *See* Cal. Civ. Code § 1698(c).  As such, Plaintiffs' contention of an agreement that the "default would be cured," even if it had been pleaded, would still fail as a matter of law because there would be no allegation of a *written* agreement to that effect.[4]

---

[4] The case of *Bank of America v. La Jolla Group II*, 129 Cal. App. 4th 706 (2005) is of no assistance to Plaintiffs.  In that case, it was *undisputed* that the borrowers had paid the full amount of their arrearages, and that the lender had agreed that the default was cured; the subsequent foreclosure was simply an *accident*, due to a miscommunication.  The *lender* thus sued the third-party purchaser to rescind the sale.  Here, by contrast, it is clear from the Plaintiffs' own Complaint that they have *not* paid their full arrearages (or any payments at all for more than eighteen months), and their sole

9

1    Because the Complaint does not allege facts demonstrating that the NOD is

2  "void," the authorities cited by Plaintiffs holding the tender requirement inapplicable

3  to void foreclosures are inapposite.  For example, in *Dimock v. Emerald Properties*, 81

4  Cal. App. 4th 868, 878 (2000), the court held that the foreclosure deed was void

5  because the conveying party was *not the trustee*, and thus "had no power to convey

6  Dimock's property."  *Id.* at 874-76.  On that basis, the court found that the trustee's

7  deed "was void as opposed to merely voidable."  *Id.* at 876.  Here, by contrast,

8  Plaintiffs have made no such allegation (nor can they), and thus they are subject to the

9  tender requirement.[5]  Similarly, Plaintiffs' reliance on Cal. Civ. Code § 3412 is

10 unavailing.  As Plaintiffs acknowledge, a claim under that statute depends upon the

11 *invalidity* of an instrument, but there are no facts alleged in the Complaint

12 demonstrating any such invalidity.

13    Lastly, Plaintiffs' reliance on Cal. Civ. Code § 2923.5 is wholly misplaced.

14 Although the California Supreme Court's decision in *Mabry v. Superior Court*, 185

15 Cal. App. 4th 208 (2010) created a limited exception to the tender requirement for

16 Section 2923.5 claims, Plaintiffs have not even *alleged* a Section 2923.5 claim here

17 (nor can they).  And the *Mabry* decision, itself, expressly acknowledged the

18 applicability of the tender rule to claims *other than* those under Section 2923.5.  *See,*

19 *e.g., Mabry*, 185 Cal. App. 4th at 225.

20    In sum, the law requires a borrower to tender his or her debt in order to plead

21 any cause of action attacking a foreclosure, or one which is "implicitly integrated"

22 with a foreclosure.  *See, e.g., Nicewander v. MTC Fin., Inc.*, No. 10-2141, 2011 U.S.

23 Dist. LEXIS 91721, at *7 (S.D. Cal. Aug. 17, 2011).  Plaintiffs have not fulfilled this

24

25

---

26 justification is an alleged oral agreement to "cure the default," which is not even alleged in the
   Complaint and which would violate the Statute of Frauds in any event.

27 [5] Indeed, the *Dimock* decision, itself, explicitly acknowledged that "in the context of overcoming a

28 voidable sale, the debtor must tender any amounts due under the deed of trust."  *Id.* at 877 (emphasis
   added).

**RECYCLED PAPER**

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

1    requirement, and by their own admission, cannot afford to do so.  The Court should

2    thus dismiss their claims without leave to amend.

3         **C.**    **Plaintiffs' Arguments In Support of Their Cancellation Claim Are**

4                **Unavailing**

5         As detailed in Defendants' moving papers, Plaintiffs claim for Cancellation fails

6    (even apart from their lack of tender), because there are no facts alleged in the

7    complaint demonstrating that the NOD was "void" or "voidable.  In their opposition,

8    Plaintiffs argue that their Cancellation claim should stand because there was a "mutual

9    agreement to cure the default" by way of Plaintiffs' payment of $19,197.  As detailed

10   in Section II.B, above, however, Plaintiffs' argument is legally unmerited.  First, the

11   Complaint does *not* allege any such agreement to "cure the default."  And second, even

12   if it did, such theory would be barred by the Statute of Frauds.  The Court should

13   dismiss Plaintiffs' Cancellation claim accordingly.

14        **D.**    **Plaintiffs' Arguments in Support of Their Quiet Title Claim Are**

15               **Unavailing**

16        Defendants' motion demonstrated that Plaintiffs' Quiet Title claim fails as a

17   matter of law, as they have failed to pay the amount of their indebtedness.  In

18   opposition, Plaintiffs offer the same argument that they set forth in support of their

19   Cancellation claim, namely, that there was an "agreement to cure the default."  As set

20   forth above, this argument is not viable.  Moreover, even if Plaintiffs could legally

21   sustain their "cure the default" argument (which they cannot), the argument *still* would

22   not permit them to quiet title, i.e., completely extinguish the security interest against

23   their property, and take title "free and clear."  *See, e.g., Tran v. Bank of Am. Corp.*, No.

24   11-2784, 2012 U.S. Dist. LEXIS 32947, at *8-9 (S.D. Cal. Mar. 12, 2012) ("It is

25   settled in California that a mortgagor cannot quiet his title against the mortgagee

26   without paying the debt secured.").  The Court should dismiss Plaintiffs' Quiet Title

27   claim accordingly.

28

E.      **Plaintiffs' Arguments in Support of Their Declaratory Relief Claim Are Unavailing**

In their moving papers, Defendants demonstrated that Plaintiffs' Declaratory Relief claim should be dismissed, for multiple reasons—including, without limitation, that the claim is duplicative of Plaintiffs' other claims.  *See, e.g., Exxon Shipping Co. v. Airport Depot Diner*, 120 F.3d 166, 168-69 (9th Cir. 1997); *Esoimeme v. Wells Fargo Bank*, No. 10-2259, 2011 U.S. Dist. LEXIS 98492, at \*49-50 (E.D. Cal. Sep. 1, 2011).

In their opposition, Plaintiffs do not dispute that their Declaratory Relief claim is duplicative of their other alleged claims (indeed, they do not make any specific arguments at all in support of that claim).  For this reason, alone, the claim should be dismissed.  *See id.*

And again, Plaintiffs' Declaratory Relief claim should also be dismissed due to i) their failure to allege tender; and ii) the invalidity of their theory of liability, namely, the "agreement to cure the default" (which is not even pleaded within the Complaint), as detailed above.

F.      **Plaintiffs' Arguments in Support of Their Fraud Claim Are Unavailing**

Defendants' Motion established that the Complaint fails to allege facts to support any fraud claim.  In their opposition, Plaintiffs argue that the pending sale is based upon a "fraudulent notice of default."  Opposition, p. 18:12-13.  As detailed in Section II.B, above, however, there was nothing improper—let alone "fraudulent"— about the NOD, and Plaintiffs' contention of an (unpleaded) "agreement to cure the default" is barred by the Statute of Frauds.  The Court should dismiss Plaintiffs' fraud claim accordingly.

RECYCLED PAPER

**G.** **Plaintiffs' Arguments in Support of Their Slander of Title Claim Are Unavailing**

Plaintiffs' slander of title cause of action fails for the multiple reasons outlined in Defendants' moving papers.  In sum: i) Plaintiffs have not alleged anything improper or slanderous about the documents recorded against their property; ii) the subject recordings are absolutely privileged; and iii) Plaintiffs have not alleged tender of their indebtedness.  Plaintiffs' arguments in opposition are unmerited.

Plaintiffs first contend that the question of privilege is an "affirmative defense," and therefore inappropriate for consideration on a motion to dismiss.  Plaintiffs are mistaken in both regards.  First, and as set forth in Defendants' motion, lack of privilege is an *element* of slander of title, not an affirmative defense.  *See Howard v. Schaniel*, 113 Cal. App. 3d 256, 264-65 (1980) ("elements of the tort are that there must be (a) a publication, (b) **which is without privilege** or justification and thus with malice, express or implied, and (c) is false, either knowingly so or made without regard to its truthfulness, and (d) causes direct and immediate pecuniary loss") (emphasis added, citations omitted).  And second, even assuming *arguendo* that privilege is an affirmative defense, nothing would preclude its consideration on a motion to dismiss (and Plaintiffs cite no authority to that effect).  As long as an issue is apparent from the pleadings or matters of judicial notice, it may be considered on a motion to dismiss. As one example: statute of limitations is undoubtedly a valid basis to move to dismiss (even though it is an affirmative defense), provided that the time-barred nature of the claim is evident from the pleadings.  *See, e.g., Keilhotz v. Lennox Int'l Inc.*, No. 08-00836, 2009 U.S. Dist. LEXIS 81108, at *14-15 (N.D. Cal. Sep. 9, 2009) (granting motion to dismiss on statute of limitations grounds).  Here, as detailed in Defendants' motion, a creditor's nonjudicial foreclosure activities are absolutely privileged, and not subject to a slander of title claim.[6]  *See, e.g., Garretson v. Post*, 156 Cal. App. 4th

_____

[6] Plaintiffs' reliance on *Contra Costa County Title Co. v. Waloff*, 184 Cal. App. 2d 59 (1960) is altogether misplaced.  That case did not even involve a secured creditor, let alone nonjudicial foreclosure documents.  Rather, it involved a *putative purchaser's* wrongful recordation of

13

RECYCLED PAPER

1508, 1517 (2007) ("Civil Code section 2924, subdivision (d) provides that a creditor's nonjudicial foreclosure activity constitutes privileged communications under the litigation privilege (Civ. Code, § 47, subd. (b)).");  *see also Bouyer v. Countrywide Bank, FSB*, No. 08-5583, 2009 U.S. Dist. LEXIS 53940, at *18-19 (N.D. Cal. Jun. 25, 2009) ("This privilege is 'absolute,'… Accordingly, plaintiffs **cannot state a claim for slander of title** based on the recordation of the Notice of Default and Election to Sell Under Deed of Trust.") (citations omitted).

Moreover, as detailed in Defendants' motion, there was nothing improper or slanderous about Defendants' alleged activities, in any event.  Indeed, it is clear from Plaintiffs' own allegations that they were in default on the subject loan when the NOD was recorded—and have been in default ever since.

And again, Plaintiffs' failure to allege tender of their debt independently bars this claim.

The Court should dismiss Plaintiffs' slander of title claim accordingly.

## H.   Plaintiffs' UCL Arguments Are Unavailing

As detailed in Defendants' motion, Plaintiffs' claim under the California Unfair Competition Law ("UCL," Cal. Bus. & Prof. Code §§ 17200 et seq.) is legally infirm for at least four independent reasons, i.e.: i) Plaintiffs' failure to allege tender of their debt; ii) federal preemption; iii) Plaintiffs' lack of standing under Proposition 64; and iv) Plaintiffs' failure to allege facts demonstrating unfair competition.  None of Plaintiffs' arguments in opposition change this.

### 1.   Tender is Required to Support Plaintiffs' UCL Claim

Without question, Plaintiffs' UCL claim represents an attack on the pending foreclosure, as well as a claim that is "implicitly integrated" with the foreclosure. Indeed, Plaintiffs are seeking to enjoin the sale.  As such, they are required to allege tender of their outstanding debt.  *See, e.g., Nicewander*, 2011 U.S. Dist. LEXIS 91721,

documents encumbering the owner's title.  As such, the nonjudicial foreclosure privilege had no application in that case.

**RECYCLED PAPER**

at *7.  Plaintiffs' contention that the tender rule does not apply to UCL claims is unsupported by any authority and without merit—UCL claims, like any other claims attacking a foreclosure, require an allegation of tender.  *See, e.g., Sarbaz v. Wachovia Bank*, No. 10-3462, 2010 U.S. Dist. LEXIS 119567, at *5 (N.D. Cal. Nov. 10, 2010) (applying tender rule to UCL claim); *Ortiz v. America's Servicing Co.*, No. 12-191, 2012 U.S. Dist. LEXIS 82092, at *25-27 (C.D. Cal. Jun. 11, 2012) (same).  For this reason, alone, the Court should dismiss Plaintiffs' UCL claim.

### 2.   Plaintiffs' UCL Claim is Federally Preempted

Defendants' motion demonstrated that Plaintiffs' UCL claim is federally preempted.  Again, federal regulations **expressly** permit nationally chartered banks (such as Wells Fargo and US Bank) to operate "**without regard to state law** limitations concerning…[p]rocessing, origination, servicing, sale or purchase of, or investment or participation, mortgages."  12 C.F.R. § 34.4(a)(10) (emphasis added).  Plaintiffs' UCL claim plainly relates to Defendants' "processing," "servicing," "sale," "investment" and/or "participation" in Plaintiffs' mortgage loan.  As such, the NBA and the OCC regulations promulgated thereunder expressly preempt Plaintiffs' UCL claim.  *See, e.g., Newsom v. Countrywide Home Loans, Inc.*, 714 F. Supp. 2d 1000, 1010-11 (N.D. Cal. 2010) (UCL claim preempted where based upon lender's disclosures relating to plaintiff's mortgage); *Curcio v. Wachovia Mortg. Corp.*, No. 09-1498, 2009 WL 3320499, at *6 (S.D. Cal. Oct. 14, 2009) (state-law claims preempted where "premised upon allegations regarding Defendant's … servicing of mortgages"); *Nguyen v. Wells Fargo Bank, N.A.*, 749 F. Supp. 2d 1022, 1031-33 (N.D. Cal. 2010).

In their opposition, Plaintiffs argue that the UCL claim is not federally preempted because it is based upon a violation of TILA (i.e., the alleged violation of 15 U.S.C. § 1641(g)), and TILA is a federal law.

Even assuming *arguendo* that Plaintiffs can escape federal preemption by tethering their UCL claim to a predicate violation of federal law, their particular UCL claim still fails:  As detailed in Section II.A, above, Plaintiffs' Section 1641(g) claim is

15

not viable, and thus to the extent the UCL claim depends upon a Section 1641(g) violation, it, too, fails. *See, e.g., Krantz v. BT Visual Images*, 89 Cal. App. 4th 164, 178 (2001) (holding that a UCL claim will "stand or fall" with the alleged underlying predicate violation); *People v. Duz-Mor Diagnostic Lab., Inc.*, 68 Cal. App. 4th 654, 673 (1998) ("the Act requires a violation of law, and…a defense to the underlying offense is a defense under the Act").

And to the extent that Plaintiffs' UCL claim is **not** based upon their defective 1641(g) claim, it is based solely upon *state law*, and thus clearly preempted as set forth above. *See, e.g., Newsom*, 714 F. Supp. 2d at 1010-11; *Curcio*, 2009 WL 3320499, at *6; *Nguyen*, 749 F. Supp. 2d at 1031-33.

### 3.   Plaintiffs Lack Standing to Bring Their UCL Claim

As set forth in Defendants' motion, Plaintiffs' UCL claim fails because it does not satisfy Proposition 64's standing requirement, i.e., that the plaintiff have lost money or property as a result of the alleged unfair competition. *See* Cal. Bus. & Prof. Code § 17204; *Hall v. Time, Inc.*, 158 Cal. App. 4th 847, 852 (2008) ("A private person now has standing to assert a UCL claim only if he or she (1) 'has suffered injury in fact,' and (2) 'has lost money or property as a result of the unfair competition.'").

In their opposition, Plaintiffs first argue that 15 U.S.C. § 1641(g) grants them standing to bring a UCL claim. This argument is without citation to any authority, and is unmerited. The Proposition 64 standing requirements are set forth in Cal. Bus. & Prof. § 17204. The provisions of 15 U.S.C. § 1641(g), by contrast, are distinct, and do not purport to confer Proposition 64 standing. In any event, as detailed herein, Plaintiffs have failed to state a claim under Section 1641(g).

Equally unavailing is Plaintiffs' reliance on their allegation that they submitted payments totaling $19,197. As is clear from the Complaint's allegations, that money (and then some) was *already due and owing* under Plaintiffs' pre-existing loan when

**RECYCLED PAPER**

they paid it, and thus they cannot maintain that they "lost" any money as a result of any alleged unfair competition for having made these payments.

Nor can Plaintiffs' argument regarding "unreasonable delay in the modification process" cure their lack of standing. Again, to bring a claim under the UCL, a plaintiff must, *inter alia*, have lost money or property as a result of the alleged unfair competition. Any alleged delay in processing Plaintiffs' application for a loan modification cannot satisfy this test, as Plaintiffs have no legal entitlement to a loan modification. *See, e.g., De la Salle v. America's Wholesale Lender*, No. 09-02701, 2010 U.S. Dist. LEXIS 36319, at *3 (E.D. Cal. Apr. 13, 2010); *Benito v. Indymac Mortg. Servs.*, No. 09-1218, 2010 U.S. Dist. LEXIS 51259, at *18-21 (D. Nev. May 21, 2010).

    4.    <u>Plaintiffs' Have Not Alleged Unfair Competition, in Any Event</u>

Lastly, Plaintiffs' UCL claim also fails for the fundamental reason that they simply have not alleged unfair competition. Again: the allegations Plaintiffs offer in support of their UCL claim are the same as those regarding their other causes of action, all of which fail as a matter of law, as detailed above and in Defendants' moving papers.

## III.  **CONCLUSION**

Each of Plaintiffs' claims fails as a matter of law, and cannot be cured through amendment. The Court should dismiss the Complaint accordingly, without leave to amend.

Respectfully submitted,

K&L GATES LLP

Dated: September 14, 2012    By:  <u>s/ Kevin S. Asfour</u>
                      Kevin S. Asfour
                      Nancy C. Hagan
                      Attorneys for Defendants Wells Fargo
                      Bank, N.A. and U.S. Bank, N.A. as
                      Trustee

17

RECYCLED PAPER