1

**K&L GATES** LLP
10100 Santa Monica Boulevard
Seventh Floor
Los Angeles, California  90067
Telephone: 310.552.5000
Facsimile: 310.552.5001

2

3

4

Kevin S. Asfour (SBN 228993)
*kevin.asfour@klgates.com*
Nancy Chang (SBN 273981)
*nancy.chang@klgates.com*

5

6

7

Attorneys for Defendants Wells Fargo
Bank, N.A. and U.S. Bank, N.A. as
Trustee

8

9

10

UNITED STATES DISTRICT COURT

11

CENTRAL DISTRICT OF CALIFORNIA

12

| | |
|---|---|
| MOHAMMAD ALI TALAIE, et al., | Case No. CV 12-4959-DMG (AGRx) |
| Plaintiffs, | **NOTICE OF MOTION AND DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES** |
| vs. | |
| WELLS FARGO BANK, N.A., et al., | |
| Defendants. | *[Filed concurrently with 1) Request for Judicial Notice; and 2) Proposed Order]* |
| | Date:          June 14, 2013 |
| | Time:          9:30 a.m. |
| | Courtroom:     7 |
| | Assigned to Hon. Dolly M. Gee |

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RECYCLED PAPER

# NOTICE OF MOTION

TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE, that on June 14, 2013, at 9:30 a.m., or as soon thereafter as the matter may be heard in Courtroom 7 of the above-captioned Court, located at 312 N. Spring Street, Los Angeles, California, 90012, Defendants Wells Fargo Bank, N.A. and U.S. Bank, N.A. as Trustee for the Structured Adjustable Rate Mortgage Loan Trust, Mortgage Pass-Through Certificates Series 2006-4 will and hereby do move the Court to dismiss Plaintiffs' First Amended Complaint, pursuant to Rules 8(a), 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure, on the ground that Plaintiffs have failed to state a claim upon which relief can be granted.  This motion is made following conference of counsel pursuant to L.R. 7-3 on May 9, 2013.

The motion is based upon this Notice; the Memorandum of Points and Authorities attached hereto; the Request for Judicial Notice filed concurrently herewith; all pleadings, papers and records on file with the Court in this action; and all other such argument and evidence as may be presented to the Court in connection with the motion.

K&L GATES LLP

Dated:  May 14, 2013

By:  s/ Kevin S. Asfour
_____
Kevin S. Asfour
Nancy Chang
Attorneys for Defendants Wells Fargo
Bank, N.A. and U.S. Bank, N.A. as
Trustee

**RECYCLED PAPER**

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................... 1

II.    SUMMARY OF PLAINTIFFS' ALLEGATIONS ............................................. 2

III.   PROCEDURAL HISTORY .......................................................................... 3

IV.    THE COURT SHOULD GRANT THE MOTION IN ITS ENTIRETY ............. 3

       A.    General Standards Governing the Motion .................................... 3

       B.    All of Plaintiffs' Claims Fail Due to Their Failure to Allege Tender ....... 4

       C.    Plaintiffs' Cancellation Cause of Action Fails as a Matter of Law .......... 6

             1.    Recording a Notice of Default Did Not Excuse Plaintiffs From Making Mortgage Payments ................................. 8

             2.    Plaintiffs' Post-NOD Payments Do Not Implicate the "One Action Rule" or its "Security First" Component ............................ 8

             3.    Plaintiffs' "Charge Off" Allegations Are Entirely Unavailing ..... 11

             4.    Plaintiffs' Section 2923.5 Allegations Are Entirely Unavailing ... 13

       D.    Plaintiffs' Quiet Title Cause of Action Fails as a Matter of Law ........... 15

       E.    Plaintiffs' Fraud Cause of Action Fails as a Matter of Law ................... 16

       F.    Plaintiffs' Slander of Title Claim Fails as a Matter of Law................... 18

       G.    Plaintiffs' UCL Cause of Action Fails as a Matter of Law ................... 20

             1.    Plaintiffs' Failure to Allege Tender Bars Their UCL Claim ......... 21

             2.    Plaintiffs' UCL Claim is Federally Preempted............................. 21

             3.    Plaintiffs Lack Standing to Assert the UCL Claim ..................... 22

             4.    Plaintiffs Have Not Alleged Facts Demonstrating Unfair Competition, In Any Event............................................ 23

V.     CONCLUSION ...................................................................................... 24

**RECYCLED PAPER**

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

# TABLE OF AUTHORITIES

## Federal Cases

*Ashcroft v. Iqbal*,
129 S. Ct. 1937 (2009) ...........................................................................4

*Bautista v. Los Angeles County*,
216 F.3d 837 (9th Cir. 2000) .................................................................3

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ...............................................................................4

*Briscoe v. Deutsche Bank Nat'l Trust Co.*,
No. 08 C 1279-JBZ, 2008 WL 4852977 (N.D. Ill. Nov. 7, 2008) .................1

*Cerecedes v. U.S. Bankcorp*,
No. 11-0219, 2011 U.S. Dist. LEXIS 75559 (C.D. Cal. July 11, 2011)).........7

*City of Cincinnati v. Deutsche Bank Nat'l Trust Co.*,
No. 1:12-cv-104, 2012 WL 4829372 (S.D. Ohio Oct. 10, 2012)....................1

*Connors v. Home Loan Corp.*,
2009 U.S. Dist. LEXIS 48638, 2009 WL 1615989 (S.D. Cal. 2009).......5, 15

*Cooper v. Pickett*,
137 F.3d 616 (9th Cir. 1997) ...............................................................16

*Curcio v. Wachovia Mortg. Corp.*,
No. 09-CV-1498, 2009 WL 3320499 (S.D. Cal. Oct. 14, 2009) .................22

*D'Oench, Duhme & Co. v. FDIC*,
315 U.S. 447 (1942) .............................................................................11

*Davenport v. Litton Loan Servicing LP*,
725 F. Supp. 2d 862 (N.D. Cal. 2010)....................................................16

*Decker v. GlenFed, Inc.*,
42 F.3d 1541 (9th Cir. 1994) ...............................................................16

*DeLeon v. Wells Fargo Bank, N.A.*,
No. 10-01390, 2010 WL 4285006 (N.D. Cal. Oct. 22, 2010)....................22

*Dorado v. Shea Homes Limited Partnership*,
No. 11-1027, 2011 U.S. Dist. LEXIS 97672 (E.D. Cal. Aug. 31, 2011) ......17

*Finuliar v. BAC Home Loans Servicing, L.P.*,
No. 11-02629, 2011 U.S. Dist. LEXIS 107324 (N.D. Cal. Sep. 21, 2011) ..20

*Garcia v. Wachovia Mortg. Corp.*,
676 F. Supp. 2d 895 (C.D. Cal. 2009)........................................................5

*Gasperini v. Center for Humanities, Inc.*,
514 U.S. 415 (1996) ...............................................................................5

*Giordano v. Wachovia Mortgage, FSB*, No. 10-04661, 2010 U.S. Dist. LEXIS
136284 (N.D. Cal. Dec. 14, 2010)..........................................................14

*Hanks v. Talbots Classics Nat'l Bank*,
No. 12-2612, 2012 U.S. Dist. LEXIS 109934 (N.D. Cal. Aug. 6, 2012) .....12

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009)...............................................................20

*Labra v. Cal-Western Reconveyance Corp.*,
No. 09-2537, 2010 U.S. Dist. LEXIS 23165 (N.D. Cal. Mar. 11, 2010)........5

*Lai v. Quality Loan Serv. Corp.*,
No. 10-2308, 2010 U.S. Dist. LEXIS 97121 (C.D. Cal. Aug. 26, 2010)........5

*Mayo v. GMAC Mortg. LLC*,
No. 08-00568-CV-W-DGK, 2010 U.S. Dist. LEXIS 51517 (W.D. Mo.
Mar. 1, 2010) .........................................................................................1

*Mbaba v. Indymac Fed. Bank F.S.B.*,
No. 09-1452, 2010 U.S. Dist. LEXIS 6353 (E.D. Cal. Jan. 27, 2010) ..........5

*Mehta v. Wells Fargo Bank, N.A.*,
737 F. Supp. 2d 1185 (S.D. Cal. 2010) ..............................................10, 24

RECYCLED PAPER

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

*Montgomery v. Wells Fargo Bank, N.A.*,
No. 12-3895, 2012 U.S. Dist. LEXIS 162912 (N.D. Cal. Nov. 13, 2012) ...11

*Montoya v. Countrywide Bank, F.S.B., No. C* 09-00641, 2009 WL 1813973
(N.D. Cal. Jun. 25, 2009).................................................................15

*National Bank of Commerce v. Commissioner*,
115 F.2d 875 (9th Cir. 1940)..........................................................12

*Navarro v. Block*,
250 F.3d 729 (9th Cir. 2001)...........................................................4

*Newsom v. Countrywide Home Loans, Inc.*,
714 F. Supp. 2d 1000 (N.D. Cal. 2010)...........................................22

*Nguyen v. Bank of Am. Nat'l Ass'n*,
No. 11-3318, 2011 U.S. Dist. LEXIS 131776 (N.D. Cal. Nov. 15, 2011) .....7

*Nguyen v. Wells Fargo Bank, N.A.*,
749 F.Supp.2d 1022 (N.D. Cal. 2010)............................................22

*Nicewander v. MTC Fin., Inc.*,
No. 10-2141, 2011 U.S. Dist. LEXIS 91721 (S.D. Cal. Aug. 17, 2011) ..5, 21

*Ortiz v. America's Servicing Co.*,
No. 12-191, 2012 U.S. Dist. LEXIS 82092 (C.D. Cal. Jun. 11, 2012) .........21

*Pradhan v. Citibank, N.A.*,
No. 10-03245, 2011 U.S. Dist. LEXIS 2350 (N.D. Cal. Jan. 10, 2011) .......21

*Rubio v. Capital One Bank*,
613 F.3d 1195 (9th Cir. 2010) ........................................................23

*Sanchez v. MortgageIt, Inc.*,
10-4146, 2011 WL 588178 (N.D. Cal. Feb. 10, 2011) ...............................7

*Sarbaz v. Wachovia Bank*,
No. 10-3462, 2010 U.S. Dist. LEXIS 119567 (N.D. Cal. Nov. 10, 2010) ...21

*Schafer v. CitiMortgage, Inc.*,
No. 11-03919, 2011 U.S. Dist. LEXIS 64558 (C.D. Cal. June 15, 2011) ....23

*Semegen v. Weidner*,
780 F.2d 727 (9th Cir. 1985)..........................................................16

*Small v. Mortgage Elec. Registration Sys.*,
No. 09-0458, 2010 U.S. Dist. LEXIS 97135, (E.D. Cal. Sep. 16, 2010).........5

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) ...........................................................4

*Tran v. Bank of Am. Corp.*,
No. 11-2784, 2012 U.S. Dist. LEXIS 32947 (S.D. Cal. Mar. 12, 2012) ......15

*Vargas v. Recontrust Co.*,
No. 08-1683, 2008 U.S. Dist. LEXIS 100115 (E.D. Cal. Dec. 1, 2008) ........5

*Watters v. Wachovia Bank, N.A.*,
127 S. Ct. 1559 (2007) ..................................................................21

*Wood v. Aegis Wholesale Corp.*,
No. 09-536, 2009 U.S. Dist. LEXIS 57151 (E.D. Cal. Jul. 6, 2009) ..............4

*Yau v. Deutsche Bank Nat'l Trust Co. Ams.*,
No. 11-0006, 2011 WL 8327957 (C.D. Cal. May 9, 2011) ...........................1

## State Cases

*Abdallah v. United Savings Bank*,
43 Cal. App. 4th 1101 (1996).........................................................5

*Aguilar v. Bosci*,
39 Cal. App. 3d 475 (1974).............................................................15

*Arnolds Management Corp. v. Eischen*,
158 Cal. App. 3d 575 (1984).......................................................5, 15

*Carson Redevelopment Agency v. Adam*,
136 Cal. App. 3d 608 (1984).........................................................13

iii

RECYCLED PAPER

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.,*
    20 Cal.4th 163 (1999)..................................................................20
*Gaffney v. Downey Savings & Loan Assn.,*
    200 Cal. App. 3d 1154 (1988) ......................................................5
*Hall v. Time, Inc.,*
    158 Cal. App. 4th 847 (2008) ....................................................22
*Howard v. Schaniel,*
    113 Cal. App. 3d 256 (1980) ......................................................18
*Karlsen v. American Savings & Loan Assn.,*
    15 Cal. App. 3d 112 (1971) ..........................................................5
*Khoury v. Maly's of California,*
    14 Cal. App. 4th 612 (1993) ......................................................20
*Krantz v. BT Visual Images,*
    89 Cal. App. 4th 164 (2001) ......................................................24
*Nungaray v. Litton Loan Servicing, LP,*
    200 Cal. App. 4th 1499 (2011) ..................................................10
*People v. Duz-Mor Diagnostic Lab., Inc.,*
    68 Cal. App. 4th 654 (1998) ......................................................24
*Philipson & Simon v. Gulsvig,*
    154 Cal. App. 4th 347 (2007) ....................................................16
*Security Pacific National Bank v. Wozab,*
    51 Cal.3d 991 (1990) ............................................................9, 10
*Seeley v. Seymour,*
    190 Cal. App. 3d 844 (1986) ......................................................19
*Star Pac. Investments, Inc. v. Oro Hills Ranch, Inc.,*
    121 Cal. App. 3d 447 (1981) ........................................................7

**Federal Statutes**

12 U.S.C. § 24 ..............................................................................21
12 U.S.C. § 371 ............................................................................21

**State Statutes**

Cal. Bus. & Prof. Code § 17200 ....................................................3
Cal. Bus. & Prof. Code § 17204 ......................................20, 22, 23
Cal. Bus. & Prof. Code §§ 17200 et seq. ......................................20
Cal. Civ. Code § 2923.5 ...........................................................7, 13
Cal. Civ. Code § 2924 .......................................................8, 15, 18
Cal. Civ. Code § 3412 ....................................................................6
Cal. Code Civ. Proc. § 726 ....................................................7, 8, 24
Cal. Stats 2012, ch 86, § 22 ........................................................15

**Federal Regulations**

12 C.F.R. § 34.4 ......................................................................21, 22

**Other Authorities**

53 Cal. Jur. 3d, *Quieting Title* § 25 ..........................................15
Black's Law Dictionary (7th Ed.) ................................................12
*Miller & Starr*, Cal. Real Est. 3d (2011) § 10:154 ........................9

iv

RECYCLED PAPER

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendants Wells Fargo Bank, N.A. ("Wells Fargo") and U.S. Bank N.A. as Trustee for the Structured Adjustable Rate Mortgage Loan Trust, Mortgage Pass-Through Certificates Series 2006-4[1] ("US Bank") (Wells Fargo and US Bank are collectively referred to as "Defendants") respectfully submit this Memorandum of Points and Authorities in support of their Motion to Dismiss the First Amended Complaint ("FAC") of Plaintiffs Mohammad Ali Talaie and Rosa W. Talaie ("Plaintiffs").

## I.    INTRODUCTION

Following their default on their mortgage loan, and faced with foreclosure, Plaintiffs filed this action seeking injunctive, declaratory and monetary relief.

Plaintiffs admit to having borrowed a total of $1.3 million over the course of two successive loans.  They further admit that, due to a financial hardship having nothing to do with Defendants, they have been unable to make regular loan payments since 2009, and have paid **nothing at all** toward their mortgage in well over two years.  Yet, by their claims in this action, Plaintiffs audaciously contend that they are entitled to take title to their property free and clear of any encumbrances.  As detailed herein, there is no legal or equitable basis for Plaintiffs' claims.

Upon Defendants' motion, the Court previously dismissed all of Plaintiffs' claims, but granted them leave to amend.  *See* Dkt. # 39.  Despite this opportunity, and

---

[1] Plaintiffs' allegations relate entirely to actions necessarily taken on behalf of or by U.S. Bank, N.A. in its capacity as trustee for the Structured Adjustable Rate Mortgage Loan Trust, Mortgage Pass-Through Certificates Series 2006-4, not in any other capacity; therefore, Plaintiffs lack standing to assert claims against U.S. Bank, N.A. in its individual capacity.  *See Yau v. Deutsche Bank Nat'l Trust Co. Ams.*, No. 11-0006, 2011 WL 8327957, at *2–3 (C.D. Cal. May 9, 2011) (borrowers lacked standing to sue a trustee of a residential mortgage-backed securitization trust in its individual corporate capacity); *City of Cincinnati v. Deutsche Bank Nat'l Trust Co.*, No. 1:12-cv-104, 2012 WL 4829372, at *2-4 (S.D. Ohio Oct. 10, 2012); *Mayo v. GMAC Mortg. LLC*, No. 08-00568-CV-W-DGK, 2010 U.S. Dist. LEXIS 51517, at *8 (W.D. Mo. Mar. 1, 2010); *Briscoe v. Deutsche Bank Nat'l Trust Co.*, No. 08 C 1279-JBZ, 2008 WL 4852977, at *5 (N.D. Ill. Nov. 7, 2008).  To the extent Plaintiffs' allegations are deemed to apply to U.S. Bank, N.A. in any other capacity, the arguments and positions stated herein are made on behalf of U.S. Bank, N.A. in those capacities, as well.

RECYCLED PAPER

a detailed order advising them of the infirmities of their claims, Plaintiffs still have failed to allege any viable causes of action. As before, each of the FAC's claims is inadequately alleged, incognizable as a matter of law, precluded by matters of public record (or even Plaintiffs' own allegations), and, perhaps most fundamentally, barred by Plaintiffs' failure to allege tender of their outstanding debt. The Court should dismiss the FAC without further leave to amend.

## II.   SUMMARY OF PLAINTIFFS' ALLEGATIONS

Plaintiffs allege having initially borrowed $800,000 from Wells Fargo on September 21, 2005, secured by a Deed of Trust against their residence. FAC, ¶ 14. Thereafter, Plaintiffs allegedly borrowed another $500,000 from Wells Fargo, secured by a second-position Deed of Trust, on April 8, 2007, for a total indebtedness of $1.3 million. FAC, ¶ 17. Plaintiffs allege that they timely made their mortgage payments until they suffered a financial hardship. FAC, ¶ 19. As Plaintiffs alleged in their original complaint in this action, their "reduction in income made the payment unaffordable" beginning in 2009. *See* Complaint, Dkt. # 1 ("Orig. Compl."), ¶ 41.

Plaintiffs allege having applied for, and been granted, a loan modification in 2010, which reduced their interest rate and the amount of their loan payments. FAC, ¶ 20-23; *see also* Orig. Compl., ¶ 42. Even with this modification, however, Plaintiffs were unable to continue making their monthly payments. FAC, ¶ 27. On November 29, 2010, a Notice of Default was recorded against the property, reflecting arrearages of $18,490.56, and growing. FAC, ¶ 27; *see also* Notice of Default attached as "Exhibit B" to Defendants' Request for Judicial Notice filed concurrently herewith ("RJN").

Thereafter, Plaintiffs allegedly sought an additional loan modification. FAC, ¶¶ 30-69. In connection with that process, Plaintiffs were allegedly advised that they needed to make payments toward their loan totaling approximately $19,000 in order to be considered for another loan modification. FAC, ¶¶ 32-48. Plaintiffs allege that

2

RECYCLED PAPER

1  they eventually made these payments, but their request for a further loan modification

2  was ultimately denied on the ground that they did not meet the investor's guidelines

3  for a further loan modification.  FAC, ¶ 59; *see also* Orig. Compl. ¶ 50.

4       Faced with the pending foreclosure, Plaintiffs then filed this action on June 6,

5  2012.

6

## III.   PROCEDURAL HISTORY

8       In their original complaint, Plaintiffs asserted seven causes of action: i)

9  Violation of 15 U.S.C. § 1641(g); ii) Cancellation of Documents; iii) Quiet Title; iv)

10 Fraud; v) Declaratory Relief; vi) Slander of Title; and vii) Violation of Cal. Bus. &

11 Prof. Code § 17200.

12      The parties then participated in the Court's Loan Modification Mediation

13 Program, but did not reach a resolution.

14      The Court thereafter granted Defendants' motion to dismiss as to all seven of

15 Plaintiffs' causes of action.  *See* Order Granting Defendants' Motion to Dismiss, Dkt.

16 # 39.  In dismissing the original complaint, the Court granted leave to amend the

17 second through seventh causes of action.  *Id.*  Plaintiffs then filed their FAC, alleging

18 claims for i) Cancellation of Documents; ii) Quiet Title; iii) Fraud; iv) Slander of Title;

19 and v) Violation of Cal. Bus. & Prof. Code § 17200.  Defendants again move to

20 dismiss all of Plaintiffs' claims.

21

## IV.   THE COURT SHOULD GRANT THE MOTION IN ITS ENTIRETY

### A.   General Standards Governing the Motion

24      To state a claim in a civil action, a plaintiff must allege the transaction or

25 occurrence giving rise to the claim and the elements of the prima facie case.  *Bautista*

26 *v. Los Angeles County*, 216 F.3d 837, 840 (9th Cir. 2000).  A court may dismiss a

27 complaint under Fed. R. Civ. P. 12(b)(6) due to "the lack of a cognizable legal theory

28 or on the absence of sufficient facts alleged under a cognizable legal theory."  *Wood v.*

RECYCLED PAPER

1  *Aegis Wholesale Corp.*, No. 09-536, 2009 U.S. Dist. LEXIS 57151, at *5 (E.D. Cal.

2  Jul. 6, 2009) (citing *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)).  In ruling on

3  such a motion, the Court accepts as true all allegations of material fact.  *Sprewell v.*

4  *Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  "The court need not,

5  however, accept as true allegations that contradict matters properly subject to judicial

6  notice or by exhibit. … Nor is the court required to accept as true allegations that are

7  merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *Id.*

8       In recent years the U.S. Supreme Court has clarified these standards, observing

9  that, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires

10  more than labels and conclusions, and a formulaic recitation of the elements of a cause

11  of action will not do.  Factual allegations must be enough to raise a right to relief

12  above the speculative level."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555

13  (2007).  A complaint is inadequate where it offers merely "naked assertion[s]" devoid

14  of "further factual enhancement."  *Id.*  Indeed:

15
16       To survive a motion to dismiss, a complaint must contain
         sufficient factual matter, accepted as true, to state a claim to
16       relief that is plausible on its face.  A claim has facial
         plausibility when the plaintiff pleads factual content that
17       allows the court to draw the reasonable inference that the
         defendant is liable for the misconduct alleged. The
18       plausibility standard is not akin to a probability requirement,
         but it asks for more than a sheer possibility that a defendant
19       has acted unlawfully. Where a complaint pleads facts that are
         merely consistent with a defendant's liability, it stops short
20       of the line between possibility and plausibility of entitlement
         to relief.
21

22  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (emphasis added, citations omitted).

23       **B.    All of Plaintiffs' Claims Fail Due to Their Failure to Allege Tender**

24       All of the FAC's causes of action seek to attack the pending foreclosure, or are

25  implicitly integrated therewith.  As a threshold matter, each of these claims is barred

26  by Plaintiffs' failure to allege tender of their outstanding indebtedness, as detailed

27  below.  **For this reason, alone**, the Court should dismiss the FAC in its entirety.

28

Under California law,[2] a prerequisite to attacking a foreclosure sale is the payment, or offer of payment, of all amounts owing on the subject loan.  *See Abdallah v. United Savings Bank*, 43 Cal. App. 4th 1101, 1109 (1996) ("[plaintiffs] are required to **allege tender** of the amount of United's secured indebtedness in order to maintain any cause of action for irregularity in the [foreclosure] sale") (emphasis added); *Karlsen v. American Savings & Loan Assn.*, 15 Cal. App. 3d 112, 117 (1971) ("A valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust… [A]n action to set aside the sale, unaccompanied by an offer to redeem, would **not state a cause of action**…") (emphasis added); *Arnolds Management Corp. v. Eischen*, 158 Cal. App. 3d 575, 578 (1984) ("It is settled that an action to set aside a trustee's sale for irregularities in sale notice or procedure should be accompanied by an offer to pay the full amount of the debt for which the property was security."); *Vargas v. Recontrust Co.*, No. 08-1683, 2008 U.S. Dist. LEXIS 100115, at *15 (E.D. Cal. Dec. 1, 2008) ("The law is long-established that a trustor or his successor must tender the obligation in full as a prerequisite to challenge of the foreclosure sale."); *Nicewander v. MTC Fin., Inc.*, No. 10-2141, 2011 U.S. Dist. LEXIS 91721, at *7 (S.D. Cal. Aug. 17, 2011) ("A cause of action 'implicitly integrated' with the irregular sale also fails, unless the defaulting borrower can allege and establish a valid tender.") (quoting *Karlsen*, 15 Cal. App. 3d at 117).[3]  Indeed, "The rules which govern tenders are **strict and are strictly applied**." *Gaffney v. Downey Savings & Loan Assn.*, 200 Cal. App. 3d 1154, 1165 (1988).

---

[2] Plaintiffs' state-law claims are governed by California law in light of, *inter alia*, Plaintiffs' allegations that the subject mortgage loan transaction occurred in California, and that the subject real property is located in California.  *See, e.g., Gasperini v. Center for Humanities, Inc.*, 514 U.S. 415, 428 (1996).

[3] *See also Lai v. Quality Loan Serv. Corp.*, No. 10-2308, 2010 U.S. Dist. LEXIS 97121, at *15-16 (C.D. Cal. Aug. 26, 2010); *Small v. Mortgage Elec. Registration Sys.*, No. 09-0458, 2010 U.S. Dist. LEXIS 97135, at *39-40 (E.D. Cal. Sep. 16, 2010); *Labra v. Cal-Western Reconveyance Corp.*, No. 09-2537, 2010 U.S. Dist. LEXIS 23165, at *17 (N.D. Cal. Mar. 11, 2010); *Mbaba v. Indymac Fed. Bank F.S.B.*, No. 09-1452, 2010 U.S. Dist. LEXIS 6353, at *14 n.8 (E.D. Cal. Jan. 27, 2010); *Garcia v. Wachovia Mortg. Corp.*, 676 F. Supp. 2d 895, 914 (C.D. Cal. 2009); *Connors v. Home Loan Corp.*, No. 08-1134, 2009 U.S. Dist. LEXIS 48638, at *20 (S.D. Cal. Jun. 9, 2009).

RECYCLED PAPER

Here, just as with their original complaint, Plaintiffs have not offered to pay their outstanding indebtedness in their FAC.  Indeed, they expressly acknowledge that they have been *unable* to make their monthly loan payments for several years.  *See, e.g.,* FAC, ¶¶ 19, 27; *see also* Orig. Compl., ¶¶ 41-42.  Thus, Plaintiffs have not alleged compliance with the tender prerequisite—nor can they.

Plaintiffs' allegation that "it would be inequitable to require tender because the trustor has a counterclaim or set-off against the beneficiary that is equal to or greater than the amount due" is entirely unavailing.  This is a bare legal conclusion, unsupported by factual allegations in the complaint, and thus properly disregarded by the Court in ruling on this motion.  *See, e.g., Sprewell*, 266 F.3d at 988; *see also Twombly*, 550 U.S. at 555; *Iqbal*, 129 S. Ct. 1937, 1949.  There are no claims alleged in the FAC demonstrating any such debt owing to the Plaintiffs; in fact, as detailed herein, there are no viable claims alleged in the FAC at all.  The Court should thus dismiss the FAC without leave to amend.

### C.   Plaintiffs' Cancellation Cause of Action Fails as a Matter of Law

Plaintiffs' first cause of action is for Cancellation of Documents, namely: the Notice of Default ("NOD") that was allegedly recorded against their property, as well as the two Deeds of Trust that Plaintiffs gave as security for their two successive mortgage loans.  In other words, Plaintiffs seek "free and clear" title to the subject property—despite their admission that they borrowed a total of $1.3 million, defaulted on that debt, and have failed to make **any** mortgage payments at all in **well over two years**.  The alleged authority for this claim is Cal. Civ. Code § 3412.  Complaint, ¶ 105.  As set forth below, Plaintiffs' claim fails as a matter of law.

Section 3412 provides for cancellation of a written instrument when it is "void or voidable," and only if the document may cause "serious injury" to the plaintiff if left outstanding.  Cal. Civ. Code § 3412.  Moreover, "To state a claim pursuant to Civil Code § 3412, plaintiffs must allege that they have restored everything of value received from the loan transaction."  *Nguyen v. Bank of Am. Nat'l Ass'n*, No. 11-3318,

RECYCLED PAPER

2011 U.S. Dist. LEXIS 131776, at *14, *21 (N.D. Cal. Nov. 15, 2011) (citing *Sanchez v. MortgageIt, Inc.*, 10-4146, 2011 WL 588178, at *2 (N.D. Cal. Feb. 10, 2011); *Star Pac. Investments, Inc. v. Oro Hills Ranch, Inc.*, 121 Cal. App. 3d 447, 457 (1981)); *see also Cerecedes v. U.S. Bankcorp*, No. 11-0219, 2011 U.S. Dist. LEXIS 75559, at *17-18 (C.D. Cal. July 11, 2011)).

Plaintiffs have not satisfied these requirements, and cannot do so, as a matter of law. Put simply, there are no facts alleged in the FAC demonstrating that the Deeds of Trust or the NOD are "void or voidable." Moreover, Plaintiffs fail to allege having "restored everything of value received from the loan transaction," in any event.

As with their prior complaint, Plaintiffs' Cancellation claim is premised upon a series of faulty legal conclusions. To begin, Plaintiffs contend that once the NOD was recorded, "Plaintiffs were not under any obligation to make further payments on their loan." FAC, ¶ 95. Plaintiffs next allege that they made payments totaling $19,197.04 over a period of several months following the NOD (even though they allegedly "owed no further obligation on the debt") in an effort to obtain another loan modification, pursuant to alleged verbal instructions from a Wells Fargo representative. FAC, ¶ 97. Later, Plaintiffs were allegedly found to be ineligible for another loan modification, but Defendants allegedly "continued to hold Plaintiffs' $19,197.00 and used it to set-off the debt owed and applied it to Plaintiffs' loan." FAC, ¶ 98. Plaintiffs allege that Defendants' conduct in this regard violates the "One Action Rule" set forth in Cal. Code Civ. Proc. § 726. Further, Wells Fargo allegedly reported the balance owing on the second mortgage to the credit bureaus as a "charge off." FAC, ¶ 99. Plaintiffs apparently believe that this "charge off" somehow excused them from the debt, and indeed, entitled them to a lien release (i.e., clear title)—which they allegedly demanded, but never received. *See* FAC, ¶¶ 100-101. Lastly, Plaintiffs allege that the NOD did not include a declaration of compliance with Cal. Civ. Code § 2923.5. Upon these allegations, Plaintiffs seek to cancel their mortgage documents. As detailed below, however, each and every one of Plaintiffs' contentions fails as a matter of law.

RECYCLED PAPER

1. <u>Recording a Notice of Default Did Not Excuse Plaintiffs From Making Mortgage Payments</u>

Plaintiffs' initial premise is that once the NOD was recorded, "Plaintiffs were not under any obligation to make further payments on their loan." FAC, ¶ 95; *see also* FAC, ¶ 97. Plaintiffs are mistaken as a matter of law. Recording an NOD is simply the first step in the non-judicial foreclosure process. Cal. Civ. Code § 2924(a)(1). Its purpose is to provide formal notice to the borrower that it is in default, and to provide a period of time for the borrower to bring the loan current (i.e., three months) before the lender may proceed to the next step in the process (i.e., recording a Notice of Trustee's Sale). *See* Cal. Civ. Code § 2924(a)(3). The NOD does not "excuse" the borrower from making any further payments, as Plaintiffs argue—on the contrary, the debt is still owing, and continues to increase with each passing month, as was reflected in Plaintiffs' NOD, itself: "This amount [of arrearage] is $18,490.56 as of November 8, 2010, and will increase until your account becomes current. … If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing." *See* Notice of Default, attached as "Exhibit B" to RJN.

2. <u>Plaintiffs' Post-NOD Payments Do Not Implicate the "One Action Rule" or its "Security First" Component</u>

Similarly, Plaintiffs' contention that Defendants violated the "One Action Rule" fails as a matter of law, as it is premised on the faulty notion that the NOD somehow "extinguished" Plaintiffs' obligation to make loan payments. Indeed, as detailed below, courts have squarely rejected the same, essential One Action Rule claim that Plaintiffs now allege.

The One Action Rule is codified at Cal. Code Civ. Proc. § 726. As explained by the California Supreme Court, "This provision was first enacted in substantially similar form more than a century ago, and its general operation has long been clear. A secured

RECYCLED PAPER

creditor can bring **only one lawsuit** to enforce its security interest and collect its debt." *Security Pacific National Bank v. Wozab*, 51 Cal.3d 991, 997 (1990) (emphasis added). In addition, "section 726 and the statutory scheme of which it is a part require a secured creditor to proceed against the security before enforcing the underlying debt." *Id.* at 999. "The public policy objectives of the one-action rule are to prevent a multiplicity of actions and vexatious litigation against the trustor, to compel competitive bidding to test the value of all of the security for the debt, and to force the beneficiary to look to all of the security as the primary fund for payment of the debt before looking to the trustor's other assets." *Miller & Starr*, Cal. Real Est. 3d (2011) § 10:154.

Here, Plaintiffs do **not** contend that Defendants "filed a lawsuit" or otherwise pursued any form of action against them to recover on their debt. Rather, their "One Action Rule violation" theory is that Wells Fargo took their post-NOD payments totaling $19,197.04 and used them "to set-off the debt owed and applied it to Plaintiffs' loan." FAC, ¶¶ 98, 103. By these allegations, Plaintiffs are undoubtedly attempting to "plead into" the line of authority holding that, where an institutional mortgage lender **seizes** the borrower's funds from a **unrelated depositary account** (such as a checking account) and applies the money toward the mortgage debt, this "set-off" is deemed to violate the "security first" component of the One Action Rule. *See, e.g., Wozab*, 51 Cal.3d at 999.

The conduct alleged in the FAC, however, does not in any way implicate the One Action Rule—and multiple courts (state and federal) have expressly rejected the **very argument** Plaintiffs are now attempting to make. Here, Plaintiffs were admittedly in default on their loan, and following the NOD, Plaintiffs *voluntarily* made payments *toward their loan arrearage* in an (ultimately unsuccessful) effort to obtain another loan modification.[4] This was the same scenario in *Mehta v. Wells Fargo Bank,*

---

[4] Indeed, Plaintiffs have previously alleged that their aim with these payments was to "cure the default" on their mortgage loan. *See* Dkt. # 23, p. 14:17-20.

RECYCLED PAPER

1   *N.A.*, 737 F. Supp. 2d 1185 (S.D. Cal. 2010).  There, as here, the borrowers attempted

2   to plead a violation of the One Action Rule by virtue of having made a series of post-

3   default payments toward the arrearage identified in the NOD as part of their efforts to

4   obtain a loan modification.  The borrowers alleged that the bank's receipt of the

5   payments represented an "attempt to satisfy a debt secured by real property by

6   attaching property other than the secured real property."  *Id.* at 1202.  The court flatly

7   rejected this argument, finding the One Action Rule to be "clearly inapplicable."  *Id.* at

8   1202.

9        In so holding, the *Mehta* court distinguished the facts of *Wozab*, where "the

10  [bank] took a setoff against the subject loans from the [borrowers'] demand account,"

11  which "account was apparently was **entirely disassociated from the loan** other than

12  the fact that the account holders had personally guaranteed the loan."  *Mehta*, 737 F.

13  Supp. 2d at 1202 (emphasis added).  The *Mehta* court correctly observed that the

14  violation in *Wozab* was attributable to "the long-standing rule that under section 726(a)

15  a bank is not allowed to take a **unilateral** setoff of funds in a depositor's **demand**

16  **account** against a debt secured by the depositor's interest in real property."  *Id.*

17  (emphasis added; quoting *Wozab*, 51 Cal.3d at 1000).  Obviously, that is not what

18  happened in *Mehta* (or in the instant case), and thus the court concluded that "no set-

19  off occurred and Wells Fargo did not pursue the Plaintiff's assets prior to foreclosure."

20  *Mehta*, 737 F. Supp. 2d at 1202.  The court thus dismissed the claim with prejudice.

21  *Id.* at 1203.

22       Likewise, the California Court of Appeal in *Nungaray v. Litton Loan Servicing,*

23  *LP*, 200 Cal. App. 4th 1499 (2011) rejected the same One Action Rule argument that

24  Plaintiffs now advance.  There, the borrowers alleged that their lender violated the One

25  Action Rule by accepting certain post-default payments made in connection with a

26  loan-modification application, and applying the payments toward the outstanding loan

27  balance.  *Id.* at 1505.  The court summarily rejected the argument, on the same grounds

28  as *Mehta*.  *See Nungaray*, 200 Cal. App. 4th at 1505-06.

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

Thus, Plaintiffs' alleged post-NOD payments simply do not implicate the One Action Rule.[5]

### 3.   Plaintiffs' "Charge Off" Allegations Are Entirely Unavailing

Plaintiffs also attempt to support their Cancellation cause of action by alleging that Wells Fargo ultimately reported the balance owing on their second mortgage as "charged off" on or about December 31, 2011 (i.e., years after Plaintiffs became unable to make regular loan payments, in 2009).  FAC, ¶ 99.  Plaintiffs apparently believe that this "charge off" somehow excused them from the debt—and indeed, entitled them to a *release of the lien*, leaving them with clear title.  *See* FAC, ¶¶ 100-101.  Plaintiffs allege that Wells Fargo's failure to release the second Deed of Trust constitutes an "extra-judicial appropriation of Plaintiffs' assets."  *Id.*  As a matter of law, these contentions are utterly without merit.

The reporting of a debt as "charged off" is simply a declaration—for tax and accounting purposes—that the debt is severely delinquent and therefore unlikely to be collected.  It does **not** legally excuse the debt.  *See, e.g., D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 461 (1942) ("A note may be nonetheless an asset though it is charged off.");[6] *Montgomery v. Wells Fargo Bank, N.A.*, No. 12-3895, 2012 U.S. Dist. LEXIS 162912, at *13-14 (N.D. Cal. Nov. 13, 2012) (distinguishing between debt

---

[5] Furthermore, it bears noting that the Deed of Trust that *Plaintiffs signed* in order to obtain their loan explicitly provides: "Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. … Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current.  If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower.  If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure."  *See* Plaintiffs' first Deed of Trust, attached as "Exhibit A" to RJN, p. 4 of 15.  The post-NOD receipt of payments alleged in the FAC is entirely consistent with, and expressly permitted by, this provision.  Indeed, Plaintiffs allege that Wells Fargo ultimately elected *not* to apply their post-NOD payments totaling $19,704.04 (even though it had the right to do so), and instead refunded the money to Plaintiffs.  *See, e.g.,* FAC, ¶ 102.

[6] Overruled on other grounds as stated in *Remington Invs. v. Hamedani*, 55 Cal. App. 4th 1033, 1038 n.2 (1997).

**RECYCLED PAPER**

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

discharged in **bankruptcy**, on which the debtor is no longer liable, versus "charged off" debt, for which the debtor is still liable).  As one court notes:

> "A 'charge-off' or chargeoff is the declaration by a creditor (usually a credit card account) that an amount of debt is unlikely to be collected.  This occurs when a consumer becomes severely delinquent on a debt. … The purpose of making such a declaration is to give the bank a tax exemption on the debt. … The charge-off, though, does not free the debtor of having to pay the debt. … While a charge-off is considered to be 'written off as uncollectable' by the bank, the debt is still legally valid, and remains as such after the fact.  The creditor legally has the right to collect the full amount for a time periods permitted the laws of places of the location of the bank and where the consumer resides."

*Hanks v. Talbots Classics Nat'l Bank*, No. 12-2612, 2012 U.S. Dist. LEXIS 109934, at *3-4 n.2 (N.D. Cal. Aug. 6, 2012) (quoting http://en.wikipedia.org/wiki/Charge-off); *see also* Black's Law Dictionary (7th Ed.) ("**charge off,** *vb.*  To treat (an account receivable) as a loss or expense because payment is unlikely; to treat as a bad debt.").

Where debt is "charged off," the creditor may claim a tax deduction—but, again, this does **not** in any way excuse the debtor or impair the legal collectability of the debt.  Rather, the creditor still holds the debt; if it is later collected, any tax deduction is simply reversed by taxing the collected debt as income.  *See, e.g., National Bank of Commerce v. Commissioner*, 115 F.2d 875, 876-78 (9th Cir. 1940) ("[P]etitioner made recoveries on some of the debts which had been charged off… [A]ny collections made…on such accounts would constitute income.").

Here, Plaintiffs admit that they became unable to make regular loan payments beginning in 2009, and have failed to make any loan payments at all since March of 2011.  Yet they now assert that they are somehow entitled to a **cancellation of their Deeds of Trust** simply because their second-mortgage debt has been reported as severely delinquent and "charged off."  Irrespective of any "charge off," the debt is still valid and collectible, as set forth above.  Moreover, California law is clear that

RECYCLED PAPER

*even where the statute of limitations has run* on the underlying debt (which is not the case here), the borrower **still** is not entitled to a release of its Deed of Trust—on the contrary, the lender continues to have the right to foreclose, and the Deed of Trust "never outlaws." *See, e.g., Carson Redevelopment Agency v. Adam*, 136 Cal. App. 3d 608, 610-11 (1984) (it is "well settled that the power of sale under a deed of trust is not barred, or '**never outlaws**,' and that the power of sale may be exercised by the trustee who holds the title even though the statute of limitations has barred any action on the underlying note") (emphasis added, citations omitted).

Plaintiffs' allegations in this regard are legally baseless, *grossly* inequitable, and offer no support to the FAC's Cancellation cause of action, or any other claim.

4.    Plaintiffs' Section 2923.5 Allegations Are Entirely Unavailing

Plaintiffs' final attempt to support their Cancellation cause of action is their allegation that the NOD did not include a declaration of compliance with Cal. Civ. Code § 2923.5. *See* FAC, ¶ 109; *see also* FAC, ¶ 29. This allegation fails for two distinct reasons. First, as a matter of judicial notice, it is simply false. And second, even if, *arguendo*, it were true, it still would not support Plaintiffs' cancellation claim.

Section 2923.5 requires that, at least 30 days prior to recording a notice of default, the mortgagee, beneficiary or authorized agent shall communicate with the borrower "to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure." Cal. Civ. Code § 2923.5(a)(2). The statute further requires that any subsequent notice of default include a declaration of compliance. Cal. Civ. Code § 2923.5(b). Notably, Section 2923.5 does not impose any obligation to modify the loan, nor to take any other steps beyond merely attempting to *discuss* available options with the borrower.[7] *See Mabry v. Superior Court*, 185 Cal. App. 4th 208, 231-32 (2010).

---

[7] The limited extent of the statute was a deliberate choice on the part of the California Legislature, as imposing any *further* obligation upon lenders would have run afoul of federal law. *See Mabry*, 185 Cal. App. 4th at 231-32. Indeed, even with the exceedingly limited reach of Section 2923.5, several federal courts have determined that it is nonetheless preempted by federal law. *See, e.g., Giordano v.*

13

1    Here, Plaintiffs' allegation that no declaration of compliance was included with

2  the NOD fails on multiple grounds.  First, as a matter of judicial notice, this allegation

3  is simply false—contrary to Plaintiffs' allegations, the NOD does indeed include a

4  declaration of compliance:

5    "The mortgagee, beneficiary or authorized agent for the
     mortgagee or beneficiary pursuant to California Civil Code §
6    2923.5(c) declares that the mortgagee, beneficiary or the
     mortgagee's or beneficiary's authorized agent has either
7    contacted the borrower or tried with due diligence to contact the
8    borrower as required by California Civil Code § 2923.5."

9

10  Notice of Default, attached as "Exhibit B" to RJN, p. 3.

11    This declaration fully complies with the statue.  *See, e.g., Mabry*, 185 Cal. App.

12  4th at 232-33.  Notably, there is **no requirement** that the Section 2923.5 declaration be

13  made under penalty of perjury, nor that the party signing it have personal knowledge of

14  the facts asserted therein.  *Id.*  Furthermore, Plaintiffs cannot (and do not) deny that

15  Wells Fargo engaged in discussions with them regarding possible options to avoid

16  foreclosure (which is all that is required by the statute)—since their complaint contains

17  a litany of allegations detailing such communications.  Accordingly, Plaintiffs'

18  allegation that the Section 2923.5 declaration was lacking from the NOD is totally

19  groundless.

20    Furthermore, even if *arguendo* the Section 2923.5 declaration *was* lacking

21  (which is plainly not the case), Plaintiffs still would have no cause of action for

22  Cancellation.  This is because the "remedy for noncompliance [with Section 2923.5] is

23  a simple postponement of the foreclosure sale, nothing more. … To repeat: The right

24  of action is limited to obtaining a postponement of an impending foreclosure to permit

25  the lender to comply with section 2923.5." [8]  *Mabry*, 185 Cal. App. 4th at 214.

26  _____

27  *Wachovia Mortgage, FSB*, No. 10-04661, 2010 U.S. Dist. LEXIS 136284, at *11 (N.D. Cal. Dec. 14,
    2010) (and authorities cited therein).

28  [8] For "material violations" of Section 2923.5 that occur **on or after January 1, 2013**, a borrower
    may bring an action for damages if a foreclosure sale subsequently occurs.  *See* Cal. Stats 2012, ch

                                    14

1    In sum, each of the various purported grounds upon which Plaintiffs assert their

2    Cancellation claim fails as a matter of law (separate and apart from their failure to

3    "restore everything of value received from the loan transaction," as is required to state

4    a cancellation claim).  The Court should dismiss Plaintiffs' Cancellation cause of

5    action, without leave to amend.

6         **D.    Plaintiffs' Quiet Title Cause of Action Fails as a Matter of Law**

7         Plaintiffs' second cause of action is for Quiet Title.  Again, the FAC is facially

8    inadequate, and the Court should dismiss this claim without leave to amend.

9         "It is settled in California that a mortgagor cannot quiet his title against the

10   mortgagee without paying the debt secured." *Tran v. Bank of Am. Corp.*, No. 11-2784,

11   2012 U.S. Dist. LEXIS 32947, at *8-9 (S.D. Cal. Mar. 12, 2012) (quoting *Shimpones*

12   *v. Stickney*, 219 Cal. 637, 649 (1934)); *see also Aguilar v. Bosci*, 39 Cal. App. 3d 475,

13   477-78 (1974); *Connors v. Home Loan Corp.*, No. 08-1134, 2009 WL 1615989, at *7

14   (S.D. Cal. Jun. 9, 2009) ("in order to allege a cause of action to quiet title, plaintiffs

15   must allege tender or offer of tender of the amounts admittedly borrowed") (citing

16   *Arnolds Management Corp. v. Eischen*, 158 Cal. App. 3d 575, 578 (1984)); *Montoya v.*

17   *Countrywide Bank, F.S.B.*, No. C 09-00641, 2009 WL 1813973, at *11 (N.D. Cal. Jun.

18   25, 2009) (same); 53 Cal. Jur. 3d, *Quieting Title* § 25 ("A plaintiff cannot come into a

19   court of equity and ask for a decree quieting title to property and debarring the

20   defendant from asserting a claim under an instrument executed by the plaintiff, without

21   restoring the consideration he or she has received.").

22        Here, Plaintiffs admit to having borrowed a total of $1.3 million, in the form of a

23   first-position mortgage loan of $800,000 and a subsequent, second-position mortgage

24   loan of $500,000 (FAC, ¶¶ 14, 17), but have not alleged that they tendered the amount

25   of indebtedness owing.  On the contrary: as detailed above, the FAC confirms that

26

27   86, § 22; Cal. Civ. Code § 2924.19(b).  This new remedy has no application here, however, because i)
28   the violation is alleged to have occurred in 2010; ii) no foreclosure sale has yet occurred; and iii) as
     detailed above, there was no violation of the statute here, in any event.

Plaintiffs are in default on their loan, and are **unable** to make their loan payments (even after having been given a loan modification). *See*, *e.g.*, FAC, ¶¶ 19-23, 27; *see also* Orig. Compl., ¶¶ 41-42. Accordingly, Plaintiffs cannot plead a valid claim to quiet title. *See* Dkt. # 39, p. 8 ("Plaintiffs cannot maintain an action for quiet title because they have failed to allege tender.").

Plaintiffs' allegation on "information and belief" that "due to the One Action Rule violation alleged herein, the Deed of Trust is no longer enforceable" (FAC, ¶ 117) is legally without merit, as detailed in Section IV.C.2, above.

The Court should dismiss this claim without leave to amend.

### E.   Plaintiffs' Fraud Cause of Action Fails as a Matter of Law

Plaintiffs' third cause of action is for Fraud. Once again, the FAC fails to state a viable claim, just as with the original complaint (separate and apart from Plaintiffs' failure to allege tender, which alone bars the claim, as set forth in Section IV.B, above).

The elements of fraud are a misrepresentation by the defendant, the defendant's knowledge of its falsity (i.e., "scienter"), the defendant's intent to induce the plaintiff's reliance, justifiable reliance by the plaintiff, and resulting damage. *Philipson & Simon v. Gulsvig*, 154 Cal. App. 4th 347, 363 (2007).

It is well-settled that claims sounding in fraud are disfavored, and thus must be pleaded with heightened factual particularity. Fed. R. Civ. P. 9(b); *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985); *Decker v. GlenFed, Inc.*, 42 F.3d 1541, 1548 n.7 (9th Cir. 1994) ("Rule 9(b) requires particularity as to the circumstances of the fraud—this requires pleading facts that by any definition are 'evidentiary': time, place, persons, statements made, explanation of why or how such statements are false or misleading."); *Davenport v. Litton Loan Servicing LP*, 725 F. Supp. 2d 862, 872 (N.D. Cal. 2010) (citing *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). In addition, "in a fraud action against a corporation, a plaintiff must 'allege the names of the persons who made the allegedly fraudulent representations, their authority to speak,

to whom they spoke, what they said or wrote, and when it was said or written.'"
*Dorado v. Shea Homes Limited Partnership*, No. 11-1027, 2011 U.S. Dist. LEXIS
97672, at *34 (E.D. Cal. Aug. 31, 2011).

The Complaint's allegations do not support any claim for fraud, for multiple
reasons. To begin, Plaintiffs have failed to allege any actionable representations. The
crux of the alleged "misrepresentations" is that Wells Fargo advised Plaintiffs that
"there **may** be options available to help you stay in your home," and that "you **may** be
eligible for a loan modification." *See* FAC, ¶ 123. This does not constitute any sort of
promise or commitment—indeed, the very same letter quoted by Plaintiffs (and
attached to their FAC as Exhibit A) continued, "In order to determine **if** a loan
modification will work for you, we need additional details about your financial
situation and income." FAC, Ex. A (emphasis added). That Plaintiffs were later
determined not to meet the underwriting requirements for another loan modification
does not somehow render these qualified statements "fraudulent" (or even inaccurate).
Likewise, Wells Fargo's alleged statements to Plaintiffs that it is "our goal to ensure
you have every opportunity to retain your home" (*see* FAC, ¶¶ 123) are not
"misrepresentations." The two alleged letters that contain these "goal" statements are
attached to the FAC as Exhibits B and E, respectively. The first such letter made it
clear that additional information was needed in order to reach a loan modification
determination (FAC, Ex. B), and the second such letter explicitly stated that "we were
unable to reach a mutual agreement" (FAC, Ex. E). Again, Plaintiffs have not alleged
any false statements (let alone any facts demonstrating knowledge of falsity, intent to
induce reliance, or justifiable reliance). For this reason, alone, the fraud claim fails.

Moreover, Plaintiffs have not alleged any *damages* stemming from the alleged
"fraud." Plaintiffs are facing a pending foreclosure. But by their own
acknowledgement, this was the result of a "financial hardship" totally unrelated to
anything Defendants are alleged to have done—i.e., one of the Plaintiffs allegedly
suffered an unfortunate **medical condition** which led to a reduction in their income.

*See* FAC, ¶ 19; *see also* Orig. Compl., ¶ 41 (the "reduction in income made the payment unaffordable" beginning in 2009).  Obviously, this turn of events was not brought about by Defendants, and was certainly not the result of any "fraud."  Apart from the pending foreclosure, itself, Plaintiffs allege that they were "lulled into making payments on their loan after default of which they were not obligated to make"—but as detailed in Section IV.C.2, above, this contention is faulty as a matter of law.  Again, the recording of an NOD did not excuse Plaintiffs' loan obligations.  Rather, they continue to be obligated to make loan payments (and this is clearly stated in the NOD, itself).  Indeed, the *purpose* of an NOD is to provide formal notice of the default to the borrower, and to allow the borrower at least three months to cure it.  *See* Cal. Civ. Code § 2924(a)(3).  Plaintiffs' allegation that "they were not obligated to make" the post-NOD payments fails as a matter of law—and in any event, Plaintiffs allege that these payments were eventually *refunded* to them (FAC, ¶ 102), as is the lender's express right (but not obligation) under the Deed of Trust that Plaintiffs signed.  *See* Deed of Trust, attached as "Exhibit A" to RJN, p. 4 of 15.  Thus, Plaintiffs have not suffered any damages, whether from "fraud" or otherwise.  On the contrary: they have continued to enjoy the use and possession of the subject property for years, without having made any payments at all.

The Court should dismiss Plaintiffs' Fraud claim without leave to amend.

### F.    <u>Plaintiffs' Slander of Title Claim Fails as a Matter of Law</u>

Plaintiffs' fourth cause of action is for Slander of Title.  Again, the FAC is facially inadequate.

The elements of a claim for slander of title are: i) a publication; ii) without privilege or justification; iii) which is false; and iv) which caused direct and immediate pecuniary loss to the plaintiff.  *Howard v. Schaniel*, 113 Cal. App. 3d 256, 264 (1980).

Here, Plaintiffs' slander of title theory rests entirely upon their faulty contention that, because their second-position mortgage debt was "charged off," they are entitled

to a release of their Deed of Trust.  As detailed in Section IV.C.3, above, this contention is legally (and equitably) groundless.

In support of this deficient claim, Plaintiffs cite *Seeley v. Seymour*, 190 Cal. App. 3d 844 (1986) in their FAC.  The *Seeley* case has absolutely nothing to do with a "charge off," or even a loan—and Plaintiffs' resort to this decision further demonstrates the infirmity of their claim.  The plaintiff in *Seeley* was the owner of a vacant lot.  At some point, he was approached by Seymour, who was interested in the property.  Seymour first made a purchase offer, which Seeley rejected.  *Id.* at 850. Thereafter, the men entered into negotiations about a potential lease of the property by Seymour—but never reached an agreement.  *Id.* at 851.  Despite his lack of an agreement with Seeley (or any interest in the property whatsoever), Seymour proceeded to draft a purported memorandum of lease, signed it himself (but never obtained Seeley's signature on it), and somehow managed to get it recorded against the property's title.  *Id.*  "At this point, Seeley knew **nothing** of the memorandum." *Id.* (emphasis added).  Later, when Seeley was attempting to sell the property, he learned of the cloud on title, and made multiple, written demands upon Seymour that he release his purported claim—which Seymour ignored.  *See id.* at 851-52.  Seeley then brought a slander of title action against Seymour and his title company (and separately sued the Recorder's Office for negligence in its improper recording of the document). *Id.* at 852.  Unsurprisingly, Seeley prevailed on his slander of title claims at trial, and this result was affirmed on appeal (although the Court of Appeal found the damages award excessive, and thus remanded for a new trial on that issue).  *Id.* at 869.

Perhaps needless to say, there are no meaningful parallels between Plaintiffs and Seeley.  Seeley was the victim of someone who deliberately clouded his title, without having any interest in the property whatsoever.  Plaintiffs, by contrast, admit to having borrowed a total of $1.3 million, having executed two Deeds of Trust as security, and having failed to make their loan payments for years.  There is nothing alleged in the

RECYCLED PAPER

1    FAC that entitles Plaintiffs to a release of these liens, and thus the allegation that their

2    Deed of Trust amounts to a "slander of title" is legally baseless.

3          And once again:  Plaintiffs' failure to allege tender of their debt, alone, renders

4    this claim invalid.  *See* Section III.B, above.

5          The Court should dismiss this cause of action accordingly, without leave to

6    amend.

7          **G.      Plaintiffs' UCL Cause of Action Fails as a Matter of Law**

8          Plaintiffs' fifth and final cause of action is for violation of the California Unfair

9    Competition Law ("UCL," Cal. Bus. & Prof. Code §§ 17200 et seq.).  As detailed

10   below, this claim is legally infirm for at least four independent reasons:  i) Plaintiffs'

11   failure to allege tender of their debt; ii) federal preemption; iii) Plaintiffs' lack of

12   standing under Proposition 64; and iv) Plaintiffs' failure to allege facts demonstrating

13   unfair competition.

14         The UCL defines "unfair competition" to include unlawful, fraudulent and

15   unfair business acts and practices, and furnishes a private right of action to a plaintiff

16   who has lost money or property as a result.  Cal. Bus. & Prof. Code §§ 17200, 17204.

17   "By proscribing 'any unlawful' business practice, section 17200 'borrows' violations

18   of other laws and treats them as unlawful practices that the unfair competition law

19   makes independently actionable."  *Cel-Tech Communications, Inc. v. Los Angeles

20   Cellular Tel. Co.*, 20 Cal.4th 163, 180 (1999).  A UCL claim should be dismissed

21   where the "complaint identifies no particular section of the statutory scheme which

22   was violated and fails to describe with any reasonable particularity the facts supporting

23   violation."  *Khoury v. Maly's of California*, 14 Cal. App. 4th 612, 619 (1993).  Further,

24   the law is clear that "UCL claims premised on fraudulent conduct trigger the

25   heightened pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure."

26   *Finiliar v. BAC Home Loans Servicing, L.P.*, No. 11-02629, 2011 U.S. Dist. LEXIS

27   107324, at *23 (N.D. Cal. Sep. 21, 2011) (citing *Kearns v. Ford Motor Co.*, 567 F.3d

28   1120, 1125 (9th Cir. 2009)).

1            1.    <u>Plaintiffs' Failure to Allege Tender Bars Their UCL Claim</u>

2          To begin, Defendants reiterate that Plaintiffs' claim is barred by their failure to

3    allege tender of their outstanding debt, as detailed in Section III.B, above, as the claim

4    is "implicitly integrated" with the pending foreclosure.  *See, e.g., Nicewander*, 2011

5    U.S. Dist. LEXIS 91721, at \*7; *Sarbaz v. Wachovia Bank*, No. 10-3462, 2010 U.S.

6    Dist. LEXIS 119567, at \*5 (N.D. Cal. Nov. 10, 2010) (applying tender rule to UCL

7    claim); *Ortiz v. America's Servicing Co.*, No. 12-191, 2012 U.S. Dist. LEXIS 82092, at

8    \*25-27 (C.D. Cal. Jun. 11, 2012) (applying tender rule to UCL claim).

9            2.    <u>Plaintiffs' UCL Claim is Federally Preempted</u>

10         In addition, Plaintiffs' UCL claim is federally preempted as to the Defendants in

11   this action.

12         Congress vested national banks with enumerated powers and "all such incidental

13   powers as shall be necessary to carry on the business of banking."  12 U.S.C. § 24;

14   *Watters v. Wachovia Bank, N.A.*, 127 S. Ct. 1559, 1566 (2007).  The National Bank

15   Act (the "NBA") and its implementing regulations, promulgated by the Office of the

16   Comptroller of the Currency ("OCC"), preempt any state laws inconsistent with "the

17   letter or the general purposes of the Act."  *Watters*, 127 S. Ct. at 1567.  The NBA

18   specifically authorizes national banks to participate in mortgage lending as regulated

19   by the OCC.  12 U.S.C. § 371(a); *Watters*, 127 S. Ct. at 1567.

20         Critically, the OCC has promulgated a regulation that expressly permits national

21   banks to operate "**without regard to state law** limitations concerning…**[d]isclosure**

22   and **advertising**…**[p]rocessing**, origination, **servicing**, sale or purchase of, or

23   **investment** or **participation** in, mortgages."  12 C.F.R. § 34.4(a)(9), (10) (emphasis

24   added).  Both Wells Fargo and US Bank are federally chartered banks, regulated by the

25   OCC.  *See* RJN, Exs. C, D; *see also* FAC, ¶¶ 5-6 (acknowledging that Defendants are

26   "national banking associations").

27         Here, it is clear from the allegations of the FAC that Plaintiffs' UCL claim rests

28   upon conduct encompassed by the above-referenced OCC regulation, and thus the

RECYCLED PAPER

claim is preempted.  Specifically, Plaintiffs cite Wells Fargo's letters and communications sent in the course of **servicing** their mortgage, particularly after the Plaintiffs' default.  *See* FAC, ¶¶ 175, 193a, 194.  Plaintiffs further allege "Wells Fargo's inability to promptly and correctly **process** the loan modification requests." FAC, ¶ 179 (emphasis added).  Plaintiffs also point to US Bank's alleged involvement as an "**investor**" in their loan.  *See, e.g.,* FAC, ¶¶ 180, 184, 204.  Moreover, Plaintiffs assert various allegations regarding faulty "**disclosures**" and "**advertising**" by Defendants.  *See, e.g.,* FAC, ¶¶ 187, 188, 191, 193b, 194, 195, 196.  Accordingly, Plaintiffs' UCL claim is preempted.  12 C.F.R. § 34.4(a)(9), (10); *see also Newsom v. Countrywide Home Loans, Inc.*, 714 F. Supp. 2d 1000, 1010-11 (N.D. Cal. 2010) (UCL claim preempted where based upon lender's disclosures relating to plaintiff's mortgage); *Curcio v. Wachovia Mortg. Corp.*, No. 09-1498, 2009 WL 3320499, at *6 (S.D. Cal. Oct. 14, 2009) (state-law claims preempted where "premised upon allegations regarding Defendant's … servicing of mortgages"); *Nguyen v. Wells Fargo Bank, N.A.*, 749 F. Supp. 2d 1022, 1031-33 (N.D. Cal. 2010).  For this reason, too, the Court should dismiss Plaintiffs' UCL claim.

3.    <u>Plaintiffs Lack Standing to Assert the UCL Claim</u>

Another impediment to Plaintiffs' UCL claim is their lack of standing. Following Proposition 64, an essential element of a UCL claim is that the plaintiff have *lost money or property as a result* of the alleged unfair competition.  *See* Cal. Bus. & Prof. Code § 17204; *Hall v. Time, Inc.*, 158 Cal. App. 4th 847, 852 (2008) ("A private person now has standing to assert a UCL claim only if he or she (1) 'has suffered injury in fact,' and (2) 'has lost money or property as a result of the unfair competition.'").  Here, Plaintiffs have not alleged any facts demonstrating that they suffered injury or lost money or property as a result of any alleged "unfair competition."  Rather, the pending foreclosure upon the subject property is the result of Plaintiffs' admitted inability to make their monthly mortgage payments—which arose *before* Defendants' conduct alleged in the Complaint.  *See* FAC, ¶ 19; *see also* Orig.

RECYCLED PAPER

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

Compl., ¶¶ 41-42.  As such, Plaintiffs have no standing to bring a UCL claim, and the Court should dismiss the claim accordingly.  Cal. Bus. & Prof. Code § 17204; *Hall*, 158 Cal. App. 4th at 852; *see also Schafer v. CitiMortgage, Inc.*, No. 11-03919, 2011 U.S. Dist. LEXIS 64558, at \*18-19 (C.D. Cal. June 15, 2011) ("Plaintiff had already stopped making payments on the DOT and Note prior to the alleged [unfair competition], and has not lost any other money or property because of the alleged fraudulent documents. Because Plaintiff cannot show a causal connection between Defendants' UCL violation and any damages she has suffered, she has failed to state a claim for a violation of section 17200.") (citations omitted).

   Indeed, in ruling on Defendants' prior motion to dismiss, this Court previously held:  "Plaintiffs fail to show a causal link between the initiation of the foreclosure proceedings and the injury of possibly losing their property.  Plaintiffs defaulted on their loan prior to any alleged unfair or fraudulent acts by Defendants.  Without factual allegations to show that Defendants' conduct caused their default, Plaintiffs fail to establish a causal connection between any alleged UCL violation and their injury in fact." Dkt. # 39, p. 11 (citing *Rubio v. Capital One Bank*, 613 F.3d 1195, 1203-04 (9th Cir. 2010)).  The FAC has changed absolutely nothing in this regard, and for this reason, as well, the Court should dismiss Plaintiffs' UCL claim without leave to amend.

   4.   Plaintiffs Have Not Alleged Facts Demonstrating Unfair Competition, In Any Event

   Apart from the foregoing (fatal) impediments to Plaintiffs' UCL cause of action, the claim fails for the additional reason that Plaintiffs have not alleged facts demonstrating unfair competition, in any event.  Plaintiffs' UCL claim reprises many of the same allegations asserted in support of their prior causes of action.  *See* FAC, ¶¶ 175 et seq.  Indeed, in some instances, Plaintiffs explicitly adopt their prior legal theories as a basis for UCL liability.  *See* FAC, ¶¶ 197 (relying upon "the Fraud cause of action herein"), 211 (relying upon the One Action Rule of Cal. Code Civ. Proc.

RECYCLED PAPER

1   § 726).  As detailed in the preceding sections, these underlying claims fail as a matter

2   of law.  As such, the UCL claim predicated upon these allegations likewise fails.  *See*

3   Dkt. # 39, p. 11 ("to the extent the Complaint fails to state claims under the other

4   causes of action, it also fails to state a claim under the UCL"); *see also Krantz v. BT*

5   *Visual Images*, 89 Cal. App. 4th 164, 178 (2001) (holding that a UCL claim will "stand

6   or fall" with the alleged underlying predicate violation); *People v. Duz-Mor Diagnostic*

7   *Lab., Inc.*, 68 Cal. App. 4th 654, 673 (1998) ("the Act requires a violation of law,

8   and…a defense to the underlying offense is a defense under the Act"); *Mehta*, 737 F.

9   Supp. 2d at 1206.

10

11  **V.**     **CONCLUSION**

12          Plaintiffs have now had two opportunities to plead.  Just as with their prior

13  complaint, however, each of the FAC's claims is inadequately alleged, and incapable

14  of being cured through amendment.  The Court should thus dismiss the FAC in its

15  entirety, without further leave to amend.

16

17                                          Respectfully submitted,

                                            K&L GATES LLP
18

19  Dated:  May 14, 2013              By:   s/ Kevin S. Asfour
                                            Kevin S. Asfour
20                                          Nancy Chang
                                            Attorneys for Defendants Wells Fargo
21                                          Bank, N.A. and U.S. Bank, N.A. as
                                            Trustee
22

23

24

25

26

27

28

RECYCLED PAPER
DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT