Lenore L. Albert, Esq.   SBN 210876
LAW OFFICES OF LENORE ALBERT
7755 Center Avenue, Suite #1100
Huntington Beach, CA 92647
Telephone (714) 372-2264
Facsimile (419) 831-3376
Email: lenorealbert@msn.com
Attorney for Plaintiffs Mohammad Ali Talaie, and Rosa W. Talaie,
*On behalf of themselves and all others similarly situated*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOHAMMAD ALI TALAIE, and ROSA W. TALAIE, an individual, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br>vs.<br><br>WELLS FARGO BANK, N.A., US BANK, National Association, as trustee, and DOES 1 through 10, inclusive,<br><br>        Defendants. | CASE NO. 12-cv-4959-DMG (AGRx)<br><br>PLAINTIFFS'MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT<br><br>**[Request for Judicial Notice under Separate Cover]**<br>Hearing Date: June 14, 2013<br>Time: 9:30AM<br>Courtroom**: 7** |

## I. FACTS

Mr. Mohammad and Mrs. Rosa Talaie brought this action after the defendants Wells Fargo Bank, N.A., as servicer; and US Bank National Association, as trustee ("US Bank") refused to accurately communicate plaintiffs' foreclosure avoidance options under the loan. The defendants lured them with lucrative promises of a fair modification if the Plaintiffs paid approximately $19,000.00. However, the modification was unfair and deceptive in that it only nominally reduced the monthly mortgage payment by only approximately 1% (reduction of $144.00 per month).

It would take eleven (11) years before Mr. & Mrs. Talaie would feel any relief, assuming complete stagnation during that same time period. In other words, the plaintiffs would have to make 132 monthly mortgage payments in order to recoup the $19,000.00 investment in the modification without factoring in the natural loss of interest that would accrue on the $19,000.00 during the interim. That was not the type of "modification" the plaintiffs or those similarly situated anticipated after making a substantial down payment of $19,000.00 which far exceeded the regular monthly mortgage payment as a precondition for a borrower who was already in trouble.

The court is already familiar with the facts of this case, so Plaintiff will not recite them again here, except to note that on April 15, 2013 the plaintiffs filed a First Amended Class Action Complaint adding allegations showing the pattern and practice of the carrot of collecting monies upon the promise of modification occurring repeatedly. (See, FAC ¶ 30-33; 41-44; and 48-50).

Then Wells Fargo charged off the second loan and the modification was denied purporting the "investor" did not approve it. (FAC ¶57-59)

In April 2012, Wells Fargo signed a National Mortgage Settlement Agreement with the Attorney General's Office promising to use certain standards and follow certain steps when evaluating a borrower for a loan modification before proceeding to foreclosure auction. (RJN)

1

**PLAINTIFFS' OPPOSITION TO THE MOTION TO DISMISS THE COMPLAINT**
Talaie v Wells Fargo Bank, N.A. et al        12-cv-4959-DMG (AGRx)

Defendants attempt to cast a wide net portraying the Talaies as deadbeats on the grounds they are not paying on their loan. However, they are in default which allows a Creditor to reject payments. It was the Talaies who came to this court requesting an injunction which included allowing them to make monthly mortgage payments towards their debt. In fact, Wells Fargo rejected over $19,000.00 in payments and sent the Talaies a check in that amount after litigation started. When the Talaies did not cash the check, Wells Fargo sent a second check threatening to send it to the state of California as being escheated if they did not do so. This is not a creditor who is willing to take the Plaintiff's monthly mortgage payments.

## II.   LAW

First, the Court must accept as true all non-conclusory, factual allegations made in the complaint. *See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164, 113 S. Ct. 1160, 122 L. Ed. 2d 517 (1993). Based upon these allegations, the Court must draw all reasonable inferences in favor of the plaintiff. *See Mohamed v. Jeppesen Dataplan, Inc.*, 579 F.3d 943, 949 (9th Cir. 2009). "[n]on-conclusory factual allegations in the complaint must be treated as true, even if the allegations seem incredible." Id. "If that factual content, so taken, 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,' the claim has facial plausibility." Id. (quoting Iqbal, 129 S.Ct. at 1949). "The make-or-break standard . . . is that the combined allegations, taken as true, must state a plausible, not a merely conceivable, case for relief." Id. "In reviewing the [motion] "we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context." *Casey v. U.S. Bank Nat. Assn.,* (2005) 127 Cal. App. 4th 1138.

"Taking judicial notice of a document is not the same as accepting the truth of its contents or accepting a particular interpretation of its meaning." (*Joslin v. H.A.S. Ins. Brokerage* (1986) 184 Cal.App.3d 369, 374.)

"[S]o long as the plaintiff alleges facts to support a theory that is not facially implausible, the court's skepticism is best reserved for later stages of the proceedings

when the plaintiff's case can be rejected on evidentiary grounds." *In re Gilead Sciences Securities Litigation*, 536 F.3d 1049, 1057 (9th Cir. 2008)." *Balderas v Countrywide Bank, N.A.,* 10-55064 (9th Cir. 2011) at pg. 21516.

### III.  LEGAL ARGUMENT

a. **Mehta is not a Bar to Plaintiff's Claims**

Defendants heavily rely on *Mehta*. *Mehta v. Wells Fargo Bank, N.A.,* 737 F. Supp. 2d 1185 (2010) is distinguishable from the facts in this case. Wells Fargo sent Mehta a Forbearance Plan. Under that plan the borrower was required to making monthly payments. Mehta sued after not obtaining a modification characterizing the payments under the Forbearance Plan as a violation of the One Action rule.

Here, on the other hand, Wells Fargo had two liens on the Talaie's property. Wells Fargo suddenly "charged off" the second lien and notated such on the Talaie's credit report. Wells Fargo also sent them a statement showing the charge off and reported it to the IRS, but then kept the lien on Talaie's property without releasing it.

It was a substantial lien. It is akin to a banker's lien. There was no issue of a banker's lien in Mehta.

After the charge off, the lien was extinguished – and keeping the lien (the Deed of Trust) recorded on the property had the same effect as if the bank had recorded a lis pendens upon it without a lawsuit. There is nothing in the law that allows a creditor to keep a deed of trust (security instrument) recorded after the debt has been extinguished. As such, the only reason for Wells Fargo to keep the lis pendens on the property was to strip the equity so the Talaies could not obtain financing elsewhere with the equity a charge off would so provide. This in effect, was a banker's lien.

The California Supreme Court has made clear that the sanction for violating the One Action Rule in this manner is loss of the security (i.e., the Deed of Trust becomes unenforceable) and, depending on the egregiousness of the violation, perhaps even loss of the entire debt. This ruling, *Security Pacific National Bank v Wozab*, 51 Cal. 3d 991

3
**PLAINTIFFS' OPPOSITION TO THE MOTION TO DISMISS THE COMPLAINT**
Talaie v Wells Fargo Bank, N.A. et al          **12-cv-4959-DMG (AGRx)**

(Cal. 1990) (*Wozab*), has become a key part of secured transactions law practice in California.

In *Wozab*, the bank was in the process of foreclosing on its deed of trust when it decided to seize monies that the Wozabs (borrowers) had in accounts at the bank (i.e. a "banker's setoff"). As in this case, the account agreement permitted such an offset and in most other states it would not have been of consequence. But not in California.

The California Supreme Court held that the bank's seizure of the money in the account constituted a One Action Rule violation under CCP §726: the bank had seized unsecured collateral to satisfy a debt secured by an interest in real property without first foreclosing on the secured collateral. The Supreme Court further held that this violation, even though the funds seized were a small fraction of the mortgage loan amount, clearly entitled the Wozabs to a declaration that the deed of trust was now invalid and unenforceable; the main debate was whether the underlying debt was also lost.

Like *Wozab,* Wells Fargo was in the process of foreclosing on its deed of trust when it decided to charge off the second loan and record it as such on Mr. Talaie's credit report, but then keep the lien on the property to which no debt was longer due.

The fact that this was a lien on property instead of a bank account is not material. As explained in Shin, "if the exercise of an involuntary "banker's lien," without the aid of judicial authority, constitutes an election of remedies triggering forfeiture of the creditor's security interest, the initiation of an independent judicial proceeding to attach a debtor's unpledged personal assets (e.g., Shin's Korean realty) should certainly have the same effect. The fact that the exercise of a "banker's lien" resulted in the immediate loss of the debtor's cash deposits but KFB has had Shin's property under attachment for more than two years is not a significant difference. The extent of appropriation is only a matter of degree and, by restricting Shin's use of his unpledged assets, his ability to protect and defend his interests has been and is impaired. "[T]he economics of modern litigation are such that the [debtor] will be unable to [pay] counsel" to defend his interest whenever the secured creditor denies the debtor access to his unpledged assets.

4
**PLAINTIFFS' OPPOSITION TO THE MOTION TO DISMISS THE COMPLAINT**
Talaie v Wells Fargo Bank, N.A. et al          12-cv-4959-DMG (AGRx)

1. (*Security Pacific National Bank* v. *Wozab*, *supra*, 51 Cal.3d at p. 1002.)" *Shin v. Superior Court*, 26 Cal. App. 4th 542 (1994)

Defendants make a point that in Mehta the money due was entirely for the loan. In contrast here, the second mortgage had nothing to do with the first mortgage and the lien after the charge off, was only in place for a wholly unrelated loan – the first mortgage, not the second. The second was already charged off.

Finally, defendants state that a charge off is not a forgiveness of debt and the debt is still owed and collectible. But that is a different issue from the one action rule. The one action rule states that a violation makes the debt unsecured. The issue here is not an attempt to collect, but the fact that the lien was not taken off once the charge occurred.

California law takes a strong stance against a creditor who refuses to obey this rule – the debt becomes unsecured. Here, Wells Fargo elected to charge off the debt, so that debt is now unsecured. Second, and more importantly, now that Wells Fargo has refused to cancel or rescind that lien, the One Action rule provides that the first is now also unsecured debt because the latter lien was nothing more than a banker's lien from 2011 to the present.

These instruments are clouding title and a cancellation of them is justified.

### b. Plaintiffs Are Not Required To Tender

Plaintiff alleged tender was not required. This court found that tender was required. At paragraphs 111-112 plaintiff explained why tender was not required. Neither *Shin* nor *Wozab* required tender. It would be against the policy behind this rule. Moreover, this is a pre-foreclosure case. Moreover, the California Courts of Appeal are ruling that tender is not required in pre-foreclosure cases. See, *West v JPMorgan Chase Bank, N.A.* (2013) 214 CalApp4th 780, *Jolley v Chase Home Finance* (2013) 213 CalApp4th 872, and *Pfeiffer v Countrywide Home Loans, Inc.* (2012) 211 CalApp4th 1250, and *Mabry v Superior Court,* 185 CalApp4th 208 (2010).

Consequently, tender should not bar any claims made in this complaint.

c. **<u>Quiet Title Survives to the Extent the Prior Claim Survives.</u>**

To the extent the above claim survives, this claim does too on the grounds it would entitle the Plaintiffs to quiet title.

d. **<u>Fraud Has Been Pled with the Particularity Required in West</u>**

The court found that the representations were not actionable in fraud and that no damages were alleged stemming from any of the representations.

Unlike the above private actions, these are class claims.

Although the court found the statements equivocal on the grounds they were couched with words such as "may" and a "goal" plaintiff specifically alleged that the overall tone which was expressed in the letters were Wells Fargo representation that these modification programs that required money to get started had a "**primary goal**" **of "helping you to continue to experience the pride of homeownership**."

After this court ruled, the California Court of Appeal reversed a trial court's dismissal of the claims for breach and fraud finding that a Temporary Payment Plan (TPP) required permanent modification under HAMP requirements when it is alleged that the borrower complied with the TPP. (*West v JPMorgan Chase Bank, N.A.* (2013) 214 CalApp4th 780 was published.)

The court in *West* found that goal oriented statements that were not true were actionable as fraud.

As explained in *West*, "a contract must be interpreted in a way to make it lawful (Civ. Code §1643). To make the Trial Plan Agreement lawful, it must be interpreted to include the provisio imposed by Directive 09-01." *West*

In this case, Wells Fargo sent out these packages instructing the plaintiffs to fill out Making Home Affordable application packages (no matter the loan amount). Consequently, like West, Wells Fargo was required to ensure their writings were interpreted in a way to make them lawful and include the provisions under the Making Home Affordable Guidelines. This has nothing to do with if a borrower is in default – a default cannot then open the door for a bank to commit fraud.

6
**PLAINTIFFS' OPPOSITION TO THE MOTION TO DISMISS THE COMPLAINT**
Talaie v Wells Fargo Bank, N.A. et al          **12-cv-4959-DMG (AGRx)**

  Furthermore, reliance is not as onerous of a standard as defendant portrays it.

> "[J]ustifiable reliance [means] circumstances were such to make it reasonable for [the] plaintiff to accept [the] defendant's statements without an independent inquiry or investigation.' [Citation]  The reasonableness of the plaintiff's reliance is judged by reference to the plaintiff's knowledge and experience.'" *West* at pg. 780

  At the time the statements were made, it was reasonable for the Plaintiff to rely upon them on the grounds the words were in writing on the Defendant's own letterhead. Plaintiff could justifiably rely on believing Wells Fargo was trying to help him save his home through a reasonable modification and not using the various federal programs to extract funds, over and over again.

### e.   Mr.  Talaie's Class Unfair and Unlawful Practices Claim Should Not Be Dismissed

  Demurrers and motions to dismiss are supposed to rarely defeat a <u>Cal. Bus. & Prof. Code §17200</u> claim on the grounds that the complaint is supposed to be construed to uphold the action whenever possible. *Motors, Inc. v Times-Mirror Co*., 102 CalApp3d, 735, 741-742 (1980); *Southwest Marine, Inc. v Triple A Machine Shop, Inc*., 720 F.Supp. 805 808 (ND Cal 1989).

  California's unfair competition law prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." (Cal. Bus. & Prof. Code § 17200.) And under this law, a practice can be prohibited as unfair or deceptive even if not *unlawful*, and vice versa. (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.,* 20 Cal. 4th 163 (1999).) For example, a plaintiff's allegations that a defendant used incomplete and misleading illustrations to sell universal life insurance policies may be actionable under the unfair competition law absent any claim that such conduct violated any regulation or statute. *Wilner v. Sunset Life Ins. Co.,* 78 Cal. App. 4th 952 (2000).

7

**PLAINTIFFS' OPPOSITION TO THE MOTION TO DISMISS THE COMPLAINT**
Talaie v Wells Fargo Bank, N.A. et al   12-cv-4959-DMG (AGRx)

An *unlawful* business practice can be "anything that can properly be called a business practice and that at the same time is forbidden by law." (*Summit Tech., Inc. v. High-Line Med. Instruments Co.,* 933 F. Supp. 918 (C.D. Cal. 1966)

This prong of the unfair competition law allows a plaintiff to enforce a broad array of state and federal statutes, including consumer-protection statutes (*Walker v. Countrywide Home Loans, Inc.,* 98 Cal. App. 4th 1158 (2002) (Cal. Civ. Code § 2954.4); antidiscrimination statutes (*Reese v. Wal-Mart Stores, Inc.,* 73 Cal. App. 4th 1225 (1999), (Unruh Civil Rights Act, Cal. Civ. Code §§ 51-51.4)); criminal statutes (*Stop Youth Addiction, Inc. v. Lucky Stores, Inc.,* 17 Cal. 4th 553 (1998), (Cal. Penal Code § 308); and environmental statutes (*Hewlett v. Squaw Valley Ski Corp.*, 54 Cal. App. 4th 499 (1997), (Cal. Pub. Res. Code § 4511).)

### 1. The UCL does Not Require Tender

The UCL does not require tender. There is no binding authority cited by defendant to support this position, so it should be disregarded as a basis to dismiss the UCL claim.

### 2. The NBA Does Not Preempt Claims Based on Foreclosure Activities

The National Bank Act does not preempt the UCL Claim on the ground that this is not an attempt to regulate lending but these complaints relate to the way the Defendants are foreclosing on the plaintiff and those similarly situated.

The federal government has traditionally granted states the exclusive right to control laws concerning foreclosure on the real property located in their state. *Tamburri v. Suntrust Mortg., Inc*., 875 F. Supp. 2d 1009 (2012)

Second, preemption is an issue that the US Supreme Court has characterized as an affirmative defense where the burden of proof is upon the Defendant. *See, Barnett Bank, NA County of Marion v Nelson, Florida Insurance Comm'r*, 517 US 25 (1996) .

Here, the Defendant makes some conclusory vague allegations, but once again, has not proven that the precise issue before this court is preempted.

The purpose of preemption of state laws is to facilitate the safe and sound operation

of federal savings associations, to enable federal savings associations to conduct their operations with the best practice of thrift institutions in the United States, or to further other purposes of the HOLA.

Here, Cal Bus & Prof Code §17200 is not irreconcilable with the safe and sound operation of federal banks (and it never has been). *McKell v Washington Mutual, Inc.* 142 Cal.App.4th 1457, 1485 (2006).

The underlying principal is that state laws that are not lending-specific are not preempted. It emphasizes that its regulations do not preempt basic state laws.

Here, these claims are based on real property, tort and contract principles and not lending laws. As described above, Wells Fargo and US Bank's actions were unfair and fraudulent. Nowhere does the NBA allow a financial institution to commit fraud. Here the laws are not in conflict.

Finally, although the court focused on the "initiation" of foreclosure, the court did not consider how the banks were "concluding" the foreclosure process.

Here, the banks were "concluding" the foreclosure process by failing to comply with 2923.5; by charging off debt thereby adversely affecting the borrower's credit and at the same time keeping the lien on the property. They were putting the borrowers through a practice of promising eligibility for a loan modification, and requesting money to initiate the modification process (a practice that violates HAMP guidelines) with a "goal" to save homeownership. However, no meaningful modification ever surfaces and no such goal is ever made apparent.

In the case of the Talaie's the most they ever received was a reduction of $144.00 after paying $19,000.00 – a 'savings' they would not realize until after making 11 years of monthly mortgage payments.

To the extent the allegations concern MHA which is a federal program, force federal law, the UCL is not preempted.

Finally, the complaint made sure to emphasize US Bank's role as the investor. US Bank hid the ball that as the investor it may deny a modification after having the servicer

9
**PLAINTIFFS' OPPOSITION TO THE MOTION TO DISMISS THE COMPLAINT**
Talaie v Wells Fargo Bank, N.A. et al            12-cv-4959-DMG (AGRx)

1 ask for funds.  Furthermore, it stated that a modification could be gained at a later time if
2 "circumstances changed" but would not disclose what those circumstances were.

3       That was unfair because these denials did not come 30 days after applying, but
4 they came in succession drug out for years – milking the distressed homeowner.

5       Injury in fact to have standing to bring this claim was outlined in *Kwikset Corp. v*
6 *Sup. Court,* 51 Cal 4th 310 (2011) where the California Supreme Court reaffirmed
7 "economic injury from unfair competition may be shown: A plaintiff may (1) surrender
8 in a transaction more, or acquire in a transaction less, than he or she otherwise would
9 have; (2) have a present or future property interest diminished; (3) be deprived of money
10 or property to which he or she has a cognizable claim; or (4) be required to enter into a
11 transaction, costing money or property, that would otherwise have been unnecessary." Id.
12 at 323.  Here, plaintiff alleged he lost $19,000.00, losing his home, lost opportunity to
13 actually save his home when the default was new instead of allowing the debt to escalate
14 into unmanageable debt, his credit was damaged which was causing great distress. Such
15 factual allegations meet the *Kwikset* standard. *Tamburri v. Suntrust Mortg., Inc.,* 2011
16 U.S. Dist. LEXIS 144442  (2011)

## IV. <u>Leave To Amend</u>

If the court should grant any of defendants' requests, then plaintiffs request leave to amend. Fed.R.Civ.P. 15(a). This policy is applied with "extraordinary liberality." *See Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1052 (9th Cir. 2003).

## IV. CONCLUSION

For the reasons stated herein, the Court should deny the motion, if it should grant, it should be granted with leave to amend.

Dated:  May 24, 2013      Respectfully Submitted,
LAW OFFICES OF LENORE ALBERT
/s/ Lenore Albert_____
LENORE L. ALBERT, ESQ.
Attorney for Plaintiff, MOHAMMAD ALI TALAIE and ROSA W. TALAIE

# PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF ORANGE:

I declare that I am over the age of 18 years, and not a party to the within action; that I am employed in Orange County, California; my business address is 7755 Center Avenue Suite #1100, Huntington Beach, CA  92647.

On May 24, 2013, I served a copy of the following document(s) described as:

**PLAINTIFFS'MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS THE COMPLAINT**

On the interested parties in this action as follows:

Attorneys for Defendants Wells Fargo Bank, N.A. and U.S. Bank, N.A. as trustee

**K&L GATES LLP**
Kevin S. Asfour (SBN 228993)
*kevin.asfour@klgates.com*
10100 Santa Monica Boulevard
Seventh Floor
Los Angeles, California  90067
Telephone: 310.552.5000
Facsimile: 310.552.5001

**[x] BY CM/ECF** – I caused such document(s) to be transmitted to the office(s) of the addressee(s) listed above by electronic mail at the e-mail address(es) set forth pursuant to FRCP 5(d)(1).

[ ] **BY EMAIL** – I caused such document(s) to be transmitted to the office(s) of the addressee(s) listed above by electronic mail at the e-mail address(es) set forth herein.

**[ ] BY FAX** – I caused such document(s) to be transmitted facsimile from the offices located in Westminster, California this business day to the aforementioned recipients.
     I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Dated: May 24, 2013

                              s/ Lenore Albert_____
                                  Lenore Albert